Valencia SPENCER, as Natural Parent and Legal Guardian of Natasha Spencer, A Minor, and Teresa Plummer, as Natural Parent and Legal Guardian of Cornay Cordale Plummer, A Minor, Plaintiffs/Appellees,

v.

TOWSON MOVING AND STORAGE, INC., Defendant/Appellant.

Supreme Court of Tennessee,
at Knoxville.

May 13, 1996.

---

O. Michael Carter, Terry L. McGhehey, Chattanooga, for Plaintiffs–Appellees.

Charles W. Dooley, Sean Antone Hunt, Chattanooga, for Defendant–Appellant.

### OPINION

BIRCH, Justice.

In this workers' compensation appeal, we consider the trial court's interpretation of the death benefit provisions of the Workers' Compensation Act [1] in calculating benefits and determine whether the trial court erred in ordering a partial commutation of attorneys' fees. The standard of review by this Court in workers' compensation

cases is *de novo* upon the record, accompanied by a presumption of the correctness of the factual findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50–6–225(e) (Supp.1995); *Fink v. Caudle,* 856 S.W.2d 952, 958 (Tenn.1993). This case, however, involves questions of law. Thus, we are not bound by the preponderance of the evidence standard, and we review questions of law *de novo* without limitation. *Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d 79, 80 (Tenn.1996); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993).

The stipulated facts, in pertinent part, are:

1. Darryl Davis was acting within the course and scope of his employment when he was killed on February 12, 1993, and his death is compensable under Tennessee workers' compensation law.

2. The deceased had two wholly dependent minor children: Natasha Spencer and Cornay Plummer.

3. Darryl Davis' workers' compensation weekly rate is $115.77.

Based upon these facts, the trial court awarded $127,296 to the plaintiffs. The trial court awarded attorneys' fees of $25,459.20 (twenty percent of the judgment). However, after crediting the defendant for payments already made to the plaintiffs' attorneys, the court commuted seventy-five percent of the outstanding balance of attorneys' fees to a lump sum and ordered that the remaining twenty-five percent be paid directly to the attorneys out of the dependents' every-other-week benefit payment.

The first issue concerns the application of Tenn.Code Ann. §§ 50–6–209(b) and –210(e). These two statutes provide for compensation arising out of the death of a covered employee, and they are to be construed together. *Haynes v. Columbia Pictures Corp.,* 178 Tenn. 648, 162 S.W.2d 383 (1942). Under the two statutes, in cases in which the deceased employee leaves two or more dependent "orphans," [2] compensation

---

1. Tenn.Code Ann. § 50–6–101 *et seq.* (1991 & Supp.1995).

2. The deceased employee's two children are not "orphans," as that word is commonly used, be-

cause their mothers are living; however, because the parties stipulated that the employee did not leave a surviving spouse who is entitled to benefits, the deceased employee's children are consid-

shall be paid in the amount of sixty-six and two-thirds percent of the "average weekly wages" of the deceased, not to exceed the "maximum total benefit." Tenn.Code Ann. §§ 50–6–209(b)(3) and –210(e)(5).

"Maximum total benefit" is defined in Tenn.Code Ann. § 50–6–102(a)(6) to mean "the sum of all weekly benefits to which a worker may be entitled." For injuries occurring on or after July 1, 1992, it is four hundred (400) weeks times the *maximum weekly benefit.* Thus, under this definition, the "maximum total benefit" is determined by multiplying the "maximum weekly benefit" by four hundred.

"Maximum weekly benefit" is defined in § 50–6–102(a)(7)(A) as "the maximum compensation payable to the worker per week." For injuries occurring on or after August 1, 1992, through June 30, 1993, the maximum weekly benefits are sixty-six and two-thirds percent of the employee's average weekly wage up to seventy-eight percent of the state's average weekly wage as determined by the department of employment security.

The trial court found that in the context of the other definitions, the definition of "maximum weekly benefit" is ambiguous; it then construed the statute to require that the amount of death benefits be calculated based upon seventy-eight percent of the state's average weekly wage and not upon the employee's actual average weekly wages. Accordingly, the trial court calculated the maximum total benefit by multiplying $318.24 [3] by four hundred weeks, for a total of $127,296.

◼ The starting point for statutory construction was stated in *Kendrick v. Kendrick,* 902 S.W.2d 918, 923 (Tenn.App.1994):

> Our search for legislative purpose begins with the language of the statute itself. *Neff v. Cherokee Ins. Co.,* 704 S.W.2d 1, 3 (Tenn.1986). If the General Assembly has spoken directly to the issue, and if the

statute is clear, our examination need proceed no further because the courts must give effect to unambiguous statutes. *Roddy Mfg. Co. v. Olsen,* 661 S.W.2d 868, 871 (Tenn.1983); *Anderson v. Outland,* 210 Tenn. 526, 532, 360 S.W.2d 44, 47 (1962).

◼ In the case under review, §§ 50–6–209(b) and –210(e) provide that the compensation to be paid to the deceased employee's dependents shall be in the amount of sixty-six and two-thirds percent of the deceased's average weekly wages, subject to the "maximum total benefit." Under Tenn.Code Ann. § 50–6–102(a)(6), the "maximum total benefit" is four hundred weeks times the "maximum weekly benefit." The "maximum weekly benefit" is, for the purposes of this case, "sixty-six and two-thirds percent (66⅔%) of the employee's average weekly wage up to seventy-eight percent (78%) of the state's average weekly wage as determined by the department of employment security." Tenn. Code Ann. § 50–6–102(a)(7)(A)(iii). We find that this definition is clear and unambiguous: the maximum weekly benefit is to be determined based upon the employee's average weekly wage; not until sixty-six and two-thirds percent of the employee's average weekly wages equals or exceeds seventy-eight percent of the state's average weekly wage does the court use the figure "seventy-eight percent (78%) of the state's average weekly wage" to determine the amount of the compensation payable to the dependents. Under §§ 50–6–209(b) and –210(e), as well as the statutory definitions quoted above, we conclude that the deceased employee's dependents are entitled to maximum total benefits in the amount of $46,312,[4] not the $127,296 awarded by the trial court.

In reaching this conclusion, we recognize, as the trial court did, that the amount of the benefits payable to these two dependents is substantially less than the benefits which would have been paid had their father died

---

ered to be "orphans" for purposes of the workers' compensation law. *Wright v. Armstrong,* 179 Tenn. 134, 163 S.W.2d 78 (1942).

**3.** We do not find in the record the basis for the $318.24 figure stated above. However, because the parties and the trial court apparently agreed that this figure was correct (i.e., that it was, at

that time, seventy-eight percent of the state's average weekly wage), we accept the figure for purposes of our discussion.

**4.** We reach this figure by multiplying $115.77 (the stipulated workers' compensation weekly rate) by four weeks.

on or before July 31, 1992. Tenn.Code Ann. § 50–6–102(7)(A)(ii) provides that for the period July 1, 1991, through August 1, 1992, "the maximum weekly benefit shall be two hundred ninety-four dollars ($294) per week." Therefore, the maximum total benefit for dependents of an employee who had died during this period would have been four hundred weeks times $294, for a total of $117,600. Even though one might question the disparity between the benefits that are due to the plaintiffs in this case and those benefits that would have been payable to dependents whose mother or father had died only seven months earlier, we are constrained by the wording of the statutes as enacted by the legislature.

The second issue concerns the trial court's decision to partially commute the outstanding balance of attorneys' fees awarded to counsel for the plaintiffs. The plaintiffs argue that the trial court erred by failing to commute the entire outstanding balance of attorneys' fees to a lump sum.

■ Tennessee Code Annotated § 50–6–229(a) states that "[a]ttorneys' fees may be paid as a partial lump sum from any award when approved and ordered by the trial judge." By using the word "may," the legislature has placed the decision of whether to commute attorneys' fees in the discretion of the trial court. *See Johnson v. Alcoholic Beverage Comm'n*, 844 S.W.2d 182, 185 (Tenn.App.1992). While this decision is a matter of discretion for the trial judge, this Court has routinely commuted attorneys' fees to a lump sum. *See Modine Mfg. Co. v. Patterson*, 876 S.W.2d 293 (Tenn.1993); *Huddleston v. Hartford Accident & Indem. Co.*, 858 S.W.2d 315 (Tenn.1993).

■ We note that stretching out the payment of attorneys' fees over a number of months or years imposes additional administrative burdens and costs on employers, insurance companies, and on lawyers and law firms. Having modified the amount of the benefits to the plaintiffs from $127,296 to $46,312, we find that the additional administrative burdens and costs associated with paying twenty-five percent of the outstanding balance of attorneys' fees over a period of years militate against a partial commutation of the attorneys' fees to a lump sum.[5] We therefore affirm the trial court's setting of the attorneys' fees at twenty percent of the total award herein,[6] but we order that the entire balance of attorneys' fees be commuted to a lump sum.

We affirm the trial court's award as modified and remand the case for entry of such orders as are necessary to carry out the judgment of this Court.

The costs are taxed to the defendant-appellant.

ANDERSON, C.J., and DROWOTA and REID, JJ., concur.

WHITE, J., not participating.

---

5. If, as ordered by the trial court, one-fourth of the outstanding balance of attorneys' fees were to be paid incrementally, the incremental attorneys' fees payments would (based upon the modified award of benefits) be small; additionally, this one-fourth of the balance of attorneys' fees would presumably not be paid in full until approximately November in the year 2000 (four hundred weeks after the death of the employee).

6. We reject the employer's argument that the trial court erred on the ground that there was no proof in the record to support the commuting of attorneys' fees to a lump sum. From the record before this Court, the trial court had adequate information upon which to resolve this issue.