Garry L. ALLEN

v.

**CITY OF GATLINBURG, et al.**

Supreme Court of Tennessee,
at Knoxville.

Jan. 19, 2001.

John T. Batson, Jr., and Nathan D. Rowell, Knoxville, TN, for appellants, City of Gatlinburg and Tennessee Municipal League Risk Management Pool.

Richard T. Wallace, Sevierville, TN, for appellee, Garry L. Allen.

Kathleen W. Stratton, Nashville, TN, for appellee, Second Injury Fund.

## OPINION

BIRCH, J., delivered the opinion of the court, in which DROWOTA, HOLDER and BARKER, JJ., joined.

This case requires us to interpret subsections (a) and (b) of the Second Injury Fund statute, Tenn.Code Ann. § 50–6–208 (1999). Garry L. Allen, sustained two injuries while working for the City of Gatlinburg; the first occurred in 1992, and the second in 1995. As a result of the 1992 injury, Allen was awarded benefits for a 20 percent permanent partial disability to the body as a whole. Following the trial for the 1995 injury, the trial court found Allen to be permanently and totally disabled and awarded him benefits to age 65, apportioning 80 percent of the liability to the City of Gatlinburg and 20 percent to the Second Injury Fund. The Special Workers' Compensation Appeals Panel agreed. We granted the City of Gatlinburg's motion for review by the entire Supreme Court pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(B) (1999) to determine whether the trial court properly apportioned benefits under the laws governing Second Injury Fund awards. Because the trial court did not make a specific finding of fact regarding the extent of disability caused by the second injury without considering the first injury, we conclude that the trial court erred. Accordingly, we remand the case so that such a determination may be made.

## I. Facts and Procedural History

Garry L. Allen, the plaintiff, began working as a diesel mechanic for the City of Gatlinburg (City) in 1985. In 1992, Allen ruptured a disk in his lower back while working on an asphalt paving machine. In 1993, he underwent surgery to repair the ruptured disk, and he later returned to work under a 50–pound lifting restriction. As a result of this injury, the Chancery Court for Sevier County approved a workers' compensation settlement based on a 20 percent permanent partial disability to the body as a whole.

On July 26, 1995, Allen injured his back for the second time while working for the City. Allen sought medical treatment and was referred to Alan Whiton, M.D. Whiton found that Allen had ruptured another disc and, after treatment, returned him to work with a permanent 30–pound lifting restriction with no repetitive bending, stooping, or reaching. Allen worked for the City's parts department for a short time thereafter, but the City was unable to offer Allen a permanent full-time position in that department. On October 15, 1996, the City terminated Allen's employment, stating that Allen was "no longer physically capable to perform the essential functions of the position."

At trial, Allen testified that he was unable to work and had not worked since his termination.[1] In addition, the parties presented expert testimony reflecting significantly different assessments of Allen's injury and disability. Allen offered the deposition of Whiton, who opined that Allen had suffered a ruptured disk in the 1995 accident, causing a 5 percent anatomical impairment to the body as a whole on top of the disability from his 1992 injury. He offered also the testimony of Julian Nadolsky, Ed.D., a vocational consultant, who testified that Allen was incapable of maintaining employment and was 100 percent disabled. In contrast, the City offered the deposition of Fred

---

1. At the time of the trial for the 1995 injury, Allen was 50 years old and had earned a GED certificate after having completed the eleventh grade.

Killefer, M.D., who stated that the accident in 1995 did not result in any new injury, impairment, or restrictions. Norma Capone, a rehabilitation case manager, testified concerning several employers and positions in the local labor market which she found appropriate for Allen.

The trial court accredited the testimony of Whiton and Nadolsky over that of Capone and Killefer and awarded Allen benefits to age 65 based on a finding that he was permanently and totally disabled. Because Allen had sustained a prior permanent disability from his 1992 injury, the trial court ordered the City to pay 80 percent of the award and the Second Injury Fund to pay the remaining 20 percent. The City appealed to the Special Workers' Compensation Appeals Panel in accordance with Tenn.Code Ann. § 50–6–225(e)(3) (1999), arguing, inter alia, that the Second Injury Fund's share of the award was not properly apportioned pursuant to Tenn.Code Ann. § 50–6–208(a) and (b) (1999). The Panel found that the trial court properly apportioned its award under subsection (b) of the statute and that subsection (a) did not apply.

We granted the City's motion for review pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(B) (1999) in order to determine whether the trial court correctly apportioned its award between the City and the Second Injury Fund under Tenn.Code Ann. § 50–6–208(a) and (b) and our decisions interpreting that statute.[2] We find that the award was not properly apportioned, and we remand the case to the trial court for further proceedings in accordance with this opinion.

## II. Standard of Review

■ In workers' compensation cases, the standard of review in this Court is de novo upon the record accompanied by a presumption of the correctness of the trial court's findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2) (1999); Spencer v. Towson Moving and Storage Inc., 922 S.W.2d 508, 509 (Tenn.1996). However, where questions of law are presented, appellate review is de novo without a presumption of correctness. Smith v. U.S. Pipe & Foundry Co., 14 S.W.3d 739, 742 (Tenn.2000). The issue in this case, construction of Tenn.Code Ann. § 50–6–208, is a question of law to which the de novo standard with no presumption of correctness applies. See Perry v. Sentry Ins. Co., 938 S.W.2d 404, 406 (Tenn.1996).

■ When construing a statute under this de novo standard, "[t]he most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn.1995). The legislature has evidenced its intent in enacting the Workers' Compensation Act by stating that the Act "is declared to be a remedial statute which shall be given an equitable construction by the courts, to the end that the objects and purposes of this chapter may be realized and attained." Tenn.Code Ann. § 50–6–116 (1999). Therefore, we interpret workers' compensation statutes "with a consideration which is always before us in workers' compensation cases that these laws should be rationally but liberally construed to promote and adhere to the Act's purposes of securing benefits to those workers who fall within its coverage." Lindsey v. Smith & Johnson, Inc., 601 S.W.2d 923, 925 (Tenn.1980).

## III. Analysis

Workers' compensation claims involving the Second Injury Fund are governed by

---

2. The City also asserts that the trial court erred in finding that: (1) Allen suffered a compensable injury, (2) he was totally disabled, and (3) the burden of proof for findings of permanent and total disability is a preponderance of the evidence rather than clear and convincing evidence. We find no error and conclude that the trial court correctly resolved these issues.

Tenn.Code Ann. § 50–6–208. The pertinent provisions of the statute are as follows:

(a)(1) If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, such employee shall be entitled to compensation from the employee's employer or the employer's insurance company only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which such employee may be entitled under this chapter from the employer or the employer's insurance company; provided, that in addition to such compensation for a subsequent injury, and after completion of the payments therefor, then such employee shall be paid the remainder of the compensation that would be due for the permanent total disability out of a special fund to be known as the "second injury fund" therein created.

. . . .

(b)(1)(A) In cases where the injured employee has received or will receive a workers' compensation award or awards for permanent disability to the body as a whole, and the combination of such awards equals or exceeds one hundred percent (100%) permanent disability to the body as a whole, the employee shall not be entitled to receive from the employer or its insurance carrier any compensation for permanent disability to the body as a whole that would be in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards.

(B) Benefits which may be due the employee for permanent disability to the body as a whole in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards, shall be paid by the second injury fund instead of by the employer.

Tenn.Code Ann. § 50–6–208(a), (b) (1999).

Subsections (a) and (b) apply in different situations, and benefits are apportioned under the two subsections in different ways. In order to claim benefits under subsection (a), the employee (1) must have "sustained a permanent physical disability from any cause or origin, whether compensable or non-compensable," and (2) must become "permanently and totally disabled through a subsequent injury." *Id.* § 50–6–208(a)(1). In addition, liability may be apportioned to the Second Injury Fund under subsection (a) only if the employer had actual knowledge of the preexisting injury before the subsequent injury occurred. Tenn.Code Ann. § 50–6–208(a)(3). In contrast, subsection (b) applies if the sum of two or more awards for permanent disability to the body as a whole equal or exceed 100 percent permanent disability. *See Perry v. Sentry Ins. Co.*, 938 S.W.2d 404, 407 (Tenn.1996). Thus, subsection (b) is more narrow in some respects, for it applies only when the employee has sustained a prior compensable injury that resulted in an award of permanent partial or total disability to the body as a whole, whereas subsection (a) applies when the employee has suffered a prior disabling injury from any source, including noncompensable sources, such as would have been attributable to a congenital defect. On the other hand, subsection (b) is broader in that an employee does not have to be rendered permanently and totally disabled by the second injury for subsection (b) to apply,[3] nor does subsection (b) contain any requirement that the employer have notice of the employee's prior injury.

---

**3.** For example, if an employee were to receive one award for 70 percent permanent partial disability to the body as a whole and then receive a second award for 40 percent permanent partial disability to the body as a whole, subsection (b) would apply because the sum of the two award percentages would total 110 percent. Thus, the Second Injury Fund would be apportioned 10 percent of the liability for the second injury (that portion exceeding 100 percent) even if the employee were still able to work and earn a wage.

Under either subsection (a) or (b), it is essential that the trial court determine the extent of disability resulting from the subsequent injury without consideration of the prior injury. *Cf. Perry*, 938 S.W.2d at 407. In other words, the trial court must find what disability would have resulted if a person with no preexisting disabilities, in the same position as the plaintiff, had suffered the second injury but not the first. This is expressly required by subsection (a), which states, "such employee shall be entitled to compensation from the ... employer ... only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which such employee may be entitled...." Tenn.Code Ann. § 50–6–208(a)(1). While subsection (b) contains no such explicit requirement, the requirement is implied in subsection (b) cases by Tenn.Code Ann. § 50–6–207(3)(F), which provides in pertinent part,

> If an employee has previously sustained an injury compensable under this section for which a court of competent jurisdiction has awarded benefits based on [the] percentage of disability [to the] body as a whole and suffers a subsequent injury not enumerated [in the schedule of compensation provided in Tenn.Code Ann. § 50–6–207], the injured employee shall be paid compensation for the period of temporary total disability and only for the degree of permanent disability that results from the subsequent injury.

*Id.* § 50–6–207(3)(F). Because subsection (b) applies only when an employee receives successive awards for permanent disability to the body as a whole, Tenn.Code Ann. § 50–6–207(3)(F) mandates that the trial court must determine the percentage of disability attributable to the second injury alone before determining whether subsection (b) will apply.[4]

In this case, it is possible that the criteria for an award under both subsections (a) and (b) may be met. However, it is impossible to determine whether the requirements of both sections are met because it appears that the trial court did not determine what percentage of disability was caused by the second injury. Allen had received a prior award of 20 percent disability to the body as a whole and was permanently and totally disabled by the second injury. The trial court apportioned 80 percent of the award to the employer and 20 percent of the award to the Second Injury Fund. Under these facts, it appears that the trial court merely subtracted the 20 percent prior disability award from a total of 100 percent and ordered the City to pay the remainder. It is possible that the trial court found that if Allen had sustained only the 1995 injury, and not the 1992 injury, he would have been 80 percent disabled. However, such a determination seems questionable, considering that even Whiton found the second injury to have caused an additional impairment of only 5 percent (half the impairment caused by the 1992 injury). Under the circumstances, we hesitate to assume, in the absence of

---

4. It is very important to note that the percentage of disability awarded for the prior injury has no bearing on this finding by the trial court. In other words, if the employee suffered a prior injury that caused a 70 percent disability, and the employee is now permanently and totally disabled, the trial court cannot merely subtract the prior 70 percent and assume that the second injury has caused a 30 percent disability. The trial court must make an independent finding of the effects of the second injury. Depending on the nature of the second injury, it is possible that the trial court could find that the second injury would have caused only a 5 percent disability if not for the first injury, even though the combination of the two injuries has resulted in permanent total disability. On the other hand, it is equally conceivable that the trial court could find that the second injury was so devastating that it would have caused a 100 percent permanent total disability even if the employee had never suffered the first injury, in which case 100 percent disability can be found for the second injury even though a 70 percent award has already been made to the same employee.

evidence of record, that the trial court indeed made such a finding.

Because it appears that the trial court may have improperly apportioned the liability between the City and the Second Injury Fund, we remand this case for a new consideration of that apportionment. On remand, the trial court should make a specific finding of fact regarding the extent of disability caused by the 1995 injury without consideration of the 1992 injury. In other words, the trial court should determine what percentage of disability would have resulted from the 1995 injury if Allen had not already sustained a prior disabling injury.

### IV. Conclusion

For the foregoing reasons, we conclude that the trial court did not properly calculate its apportionment of benefits between the City and the Second Injury Fund pursuant to Tenn.Code Ann. § 50–6–208(a) and (b) because it did not make a specific finding of fact regarding the extent of disability caused by Allen's second injury without consideration of his prior injury. Therefore, we remand so that such a finding can be made. Costs on this appeal are taxed to the Second Injury Fund.

ANDERSON, C.J., not participating.