# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### June 14, 2001 Session

## TRAVIS MILTON WATT v. LUMBERMENS MUTUAL CASUALTY INSURANCE CO., ET AL.

**Appeal from the Chancery Court for Madison County**
**No. 53638     Joe C. Morris, Chancellor**

---

**No. W2000-00104-SC-R3-CV - Filed December 20, 2001**

---

This case requires construction of the Second Injury Fund statute, Tenn. Code Ann. § 50-6-208 (1999 Repl.). Travis Milton Watt has suffered two successive scheduled-member injuries: (1) a 50 percent disability to the hand, which equates to an 18.75 percent disability to the body as a whole; and (2) a 100 percent disability to the leg, which equates to a 50 percent disability to the body as a whole. The trial court found that the two injuries rendered Watt permanently and totally disabled. The court found that the two injuries contributed equally to Watt's disability and apportioned liability for permanent and total disability benefits equally between Lumbermens Mutual Casualty Insurance Company and the Second Injury Fund. The Second Injury Fund appealed, asserting that the trial court erred: (1) in finding Watt to be eligible for permanent and total disability benefits on the basis of two scheduled member injuries whose individual disability ratings equate to less than 100 percent to the body as a whole; and (2) in holding the Second Injury Fund liable for 50 percent of the benefit award. After thorough review and consideration, we hold that the trial court properly found Watt to be permanently and totally disabled and correctly apportioned the liability. We reject the Second Injury Fund's contention that our holding effectively allows re-litigation of prior workers' compensation settlements; rather, we find it reasonable for trial courts to conclude that the combined effects of multiple work-related injuries may result in a disability greater than that caused by those injuries when considered in isolation. Accordingly, we affirm the judgment of the trial court.

**Direct Appeal Pursuant to Tenn. Code Ann. § 50-6-225(e);**
**Judgment of the Chancery Court Affirmed**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., E. RILEY ANDERSON and WILLIAM M. BARKER, JJ., joined. JANICE M. HOLDER, J., filed a concurring and dissenting opinion.

Paul G. Summers, Attorney General and Reporter, Dianne Stamey Dycus, Deputy Attorney General, Nashville, Tennessee, for the appellant, Second Injury Fund.

P. Allen Phillips and B. Duane Willis, Jackson, Tennessee, for the appellee, Lumbermens Mutual Casualty Insurance Co.

T.J. Emison, Jr., Alamo, Tennessee, for the appellee, Travis Milton Watt.

## OPINION

### I. Facts and Procedural History

At the time of trial in this cause, the employee, Travis Milton Watt, was 51 years old. He left high school in 1965 during the tenth grade, did not obtain a GED, and has no other formal or vocational education. Since that time, he has spent most of his life working in occupations which demand strenuous physical labor, including farming, factory work, truck driving, and construction.

In 1971, while working for Alton Box Company, Watt was injured when his right hand was pulled between a set of cylinders on a press. His hand was torn and crushed, and his ring and little finger were amputated. The injury left him with no feeling in his index finger and significantly impaired his ability to move the rest of his hand. As a result of this injury, Watt received a court-approved workers' compensation settlement for 50 percent permanent partial disability to the right hand. Despite this disability, he was able to continue the type of employment he had performed in the past.

In 1996, Watt obtained a job performing repair and maintenance work for Hamilton Hills Shopping Center (Shopping Center). At the time he was hired, the manager of the Shopping Center was aware of his prior disability. On August 24, 1996, while working at the Shopping Center, Watt fell approximately twenty feet from an extension ladder and sustained a comminuted fracture of the right calcaneus and a fracture of the right fibula.[1] The fibula healed without permanent complications; the calcaneus did not. Watt developed post-traumatic arthritis in the subtalar joint, located just below the ankle, and in the joints of his foot.

Thereafter, Watt filed suit seeking workers' compensation benefits from Lumbermens Mutual Casualty Insurance Co. (Lumbermens) and the Second Injury Fund (Fund). At trial, Watt testified that his foot and leg hurt constantly and were nearly always swollen. He stated that the pain prevented him from standing for more than five minutes at a time and that even sitting for extended periods would cause his leg to hurt and become numb. He also noted that his inability to balance on the leg caused him to fall occasionally and that the pain in his foot made it difficult to drive, walk, or climb stairs. Because of his injuries, he asserted, he could not return to any of the jobs he had performed in the past, and he expressed the belief that he was permanently unable to work. Watt's wife, Linda Faye Watt, corroborated Watt's testimony regarding the effects of his injury.

---

[1] "Calcaneus" refers to the bone which forms the heel. The term "comminuted" signifies that the bone did not fracture cleanly, but was crushed into many small pieces. "Fibula" refers to the smaller of the two bones between the knee and the ankle. See Dorland's Illustrated Medical Dictionary 252, 363, 630 (27th ed. 1988).

Watt also offered the deposition testimony of his treating physician, Keith D. Nord, M.D., who opined that Watt's injury would require him to wear a brace on his leg and would cause him to be unable to stand for long periods of time, walk more than a block, climb, crawl, or carry weights of more than 20 pounds. Nord noted that Watt might be capable of sedentary work but concluded that he would not be able to return to the type of work he had done in the past. Nord suggested, however, that a surgical fusion of the joints in Watt's foot might improve his ability to use his leg.

Orthopedic surgeon and foot specialist Greer Richardson, M.D., also testified by deposition. Richardson noted that Watt's injury had caused deformation of the heel and arthritis in the hind foot, ankle joint, and mid-foot and that the mobility of Watt's foot had been greatly reduced. Richardson opined that the surgical procedure Nord suggested probably would relieve some of Watt's pain but would not restore his ability to walk on uneven ground, climb, or balance on his foot. Richardson agreed that, from a purely physical standpoint, Watt would be capable of sedentary work, but he recognized that his assessment did not take into consideration Watt's intellectual function or occupational history. Richardson stated that Watt would be unable, due to the combined effects of his leg injury and hand injury, to perform any job that would require him to stand.

Based on this evidence, the trial court found Watt to be 100 percent permanently and totally disabled and ordered that each defendant pay 50 percent of Watt's benefits. The Fund appealed, and the Supreme Court Special Workers' Compensation Appeals Panel held that the trial judge did not make sufficient findings to decide the case in accordance with Bomely v. Mid-America Corp., 970 S.W.2d 929 (Tenn. 1998). The Panel remanded the cause, directing the trial court to make specific findings regarding the percentages of permanent disability caused by Watt's injuries and whether judgment was rendered pursuant to subsection (a) or subsection (b) of the Second Injury Fund statute, Tenn. Code Ann. § 50-6-208 (1999 Repl.). On remand, the trial court reaffirmed that Watt was permanently and totally disabled, concluding that he was "totally incapacitated from working at an occupation which brings him an income," and it held that Tenn. Code Ann. § 50-6-208(a) governed the case. The trial court divided liability equally between Lumbermens and the Fund based on a finding that Watt's two injuries contributed equally to his disability.

The Fund again appealed, contending that the trial court erred: (1) in finding Watt eligible for permanent and total disability benefits on the basis of two scheduled member injuries whose individual disability ratings equate to less than 100 percent to the body as a whole; and (2) in apportioning liability for benefits evenly between Lumbermens and the Fund. The case was argued before the Special Workers' Compensation Appeals Panel, but was transferred, prior to issuance of a memorandum opinion, to the full Supreme Court. After thorough consideration, we hold that the trial court did not err in finding Watt to be entitled to permanent and total disability benefits, and we further hold that the evidence supports the trial court's division of liability. Accordingly, we affirm the judgment of the trial court.

## II. Standard of Review

The standard of review in workers' compensation cases is de novo upon the record, accompanied by a presumption of the correctness of the trial court's findings of fact. Tenn. Code Ann. § 50-6-225(e)(2) (1999 Repl.); Spencer v. Towson Moving and Storage, Inc., 922 S.W.2d 508, 509 (Tenn. 1996). Where questions of law are presented, however, our review is de novo with no presumption of correctness. Smith v. U.S. Pipe & Foundry Co., 14 S.W.3d 739, 742 (Tenn. 2000); Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996).

Issues of statutory construction are questions of law to which we apply this de novo standard without a presumption of correctness. See Perry v. Sentry Ins. Co., 938 S.W.2d 404, 406 (Tenn. 1996). When construing a statute, courts must "ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995). The legislature has declared that the Workers' Compensation Act is intended "to be a remedial statute which shall be given an equitable construction by the courts, to the end that the objects and purposes of this chapter may be realized and attained." Tenn. Code Ann. § 50-6-116 (1999 Repl.). Accordingly, "these laws should be rationally but liberally construed to promote and adhere to the Act's purposes of securing benefits to those workers who fall within its coverage." Lindsey v. Smith & Johnson, Inc., 601 S.W.2d 923, 926 (Tenn. 1980).

### III. Analysis
### A. Eligibility for Permanent and Total Disability Benefits

We first address whether Watt is entitled to receive permanent and total disability benefits. Initially, we note that Watt's disabilities in this case are both to scheduled members; he received 75 weeks of benefits for a 50 percent disability to the hand and 200 weeks of benefits for a 100 percent disability to the leg. In Second Injury Fund cases, we convert scheduled member disabilities to an equivalent body-as-a-whole disability using the "number of weeks" conversion method. See Scales v. City of Oak Ridge, ___ S.W.3d ___ (Tenn. 2001). Under this method, the number of weeks awarded for a scheduled member injury is expressed as a percentage of the 400 weeks available for disability to the body as a whole. Thus, Watt's hand injury equates to an 18.75 percent disability to the body as a whole, and his leg injury equates to a 50 percent disability to the body as a whole. When added together, the total body-as-a-whole disability attributable to Watt's two injuries equals 68.75 percent. The Fund contends that Watt legally cannot be found permanently and totally disabled on the basis of these two injuries because the individual disability ratings, when combined, equate to less than 100 percent to the body as a whole.

In addressing this contention, we begin with this Court's interpretation of the language of the Second Injury Fund statute, Tenn. Code Ann. § 50-6-208 (1999 Repl.). In Allen v. City of Gatlinburg, this Court described the operation of the statute in detail:[2]

_____

[2]In pertinent part, the statute provides:

(continued...)

Subsections (a) and (b) [of the Second Injury Fund statute] apply in different situations, and benefits are apportioned under the two subsections in different ways. In order to claim benefits under subsection (a), the employee (1) must have "sustained a permanent physical disability from any cause or origin, whether compensable or noncompensable," and (2) must become "permanently and totally disabled through a subsequent injury." In addition, liability may be apportioned to the Second Injury Fund under subsection (a) only if the employer had actual knowledge of the preexisting injury before the subsequent injury occurred. In contrast, subsection (b) applies if the sum of two or more awards for permanent disability to the body as a whole equal or exceed 100 percent permanent disability. Thus, subsection (b) is more narrow in some respects, for it applies only when the employee has sustained a prior compensable injury that resulted in an award of permanent partial or total disability . . . , whereas subsection (a) applies when the employee has suffered a

_____

[2](...continued)

(a)(1) If an employee has previously sustained a permanent physical disability from any cause or origin and becomes permanently and totally disabled through a subsequent injury, such employee shall be entitled to compensation from the employee's employer . . . only for the disability that would have resulted from the subsequent injury, and such previous injury shall not be considered in estimating the compensation to which such employee may be entitled . . . ; provided, that in addition to such compensation for a subsequent injury, and after completion of the payments therefor, then such employee shall be paid the remainder of the compensation that would be due for the permanent total disability out of a special fund to be known as the "second injury fund" therein created.

(2) To receive benefits from the second injury fund, the injured employee must be the employee of an employer who has properly insured such employer's workers' compensation liability or has qualified to operate under the Workers' Compensation Law as a self-insurer, and the employer must establish that the employer had actual knowledge of the permanent and preexisting disability at the time that the employee was hired or at the time that the employee was retained in employment after the employer acquired such knowledge, but in all cases prior to the subsequent injury.

. . . .

(b)(1)(A) In cases where the injured employee has received or will receive a workers' compensation award or awards for permanent disability to the body as a whole, and the combination of such awards equals or exceeds one hundred percent (100%) permanent disability to the body as a whole, the employee shall not be entitled to receive from the employer or its insurance carrier any compensation for permanent disability to the body as a whole that would be in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards.

(B) Benefits which may be due the employee for permanent disability to the body as a whole in excess of one hundred percent (100%) permanent disability to the body as a whole, after combining awards, shall be paid by the second injury fund.

Tenn. Code Ann. § 50-6-208(a), (b).

prior disabling injury from any source, including noncompensable sources . . . . On the other hand, subsection (b) is broader in that an employee does not have to be rendered permanently and totally disabled by the second injury for subsection (b) to apply, nor does subsection (b) contain any requirement that the employer have notice of the employee's prior injury.

36 S.W.3d 73, 76 (Tenn. 2001) (citations and footnote omitted).[3]

In asserting that Watt is barred from recovering permanent and total disability benefits, the Fund relies on <u>Minton v. State Indus., Inc.</u>, 825 S.W.2d 73 (Tenn. 1992). In <u>Minton</u>, the employee first suffered a back injury, resulting in a 10 percent disability to the body as a whole, and then suffered a 100 percent disability to the leg, which the Court converted to a 50 percent disability to the body as a whole. <u>Id.</u> at 74-75. The trial court found Minton had been rendered permanently and totally disabled by the combination of the two injuries. <u>Id.</u> at 75. This Court, however, added together the percentages of disability caused by the injuries and found that Minton's "aggregate permanent disability" was only 60 percent. <u>Id.</u> at 80. Viewing the medical evidence in the record, we held that Minton could be permanently and totally disabled only if the medical evidence indicated that the second injury aggravated the first injury, so that the amount of disability attributed to the first injury could be redefined. <u>Id.</u> at 79. We concluded, "There is no medical evidence in this record that the knee injury in 1990 aggravated the back injury of 1980. The trial court was therefore in error in finding that a combination of the two injuries rendered the Plaintiff totally and permanently disabled . . ." Thus, we held that the facts did not support a finding that Minton was permanently and totally disabled, and we limited her recovery to the 200 weeks of benefits available for loss of a leg. <u>Id.</u> at 79-80.

The holding of <u>Minton</u> reflects the premise that employees in Second Injury Fund cases must suffer an aggregate disability equivalent to 100 percent disability to the body as a whole before being eligible for permanent and total disability benefits. The trial court's award of permanent and total disability in <u>Minton</u> was reversed because the first injury had not been aggravated and therefore the disability attributed to it could not be increased, and the second injury was to a scheduled member and could not be increased beyond 100 percent to that member. If <u>Minton</u> were to control the outcome here, Watt could not recover permanent and total disability benefits because his aggregate disability to the body as a whole equals only 68.75 percent, there has been no aggravation to justify re-defining the first injury, and the disability caused by his second injury cannot exceed 100 percent to the leg or 50 percent to the body as a whole. Despite being rendered permanently unable to work as the sole result of work-related injuries, Watt would only be eligible for the 200 weeks of benefits available for loss of a leg.

---

[3]The trial court found that both subsections of the Second Injury Fund statute were applicable in this case, though it applied subsection (a) because it found that subsection more favorable to the employer. Though this finding does not affect the result in this case, we note that it was in error. As discussed above, the disability caused by Watt's two injuries, when added together, equates to only 68.75 percent to the body as a whole. Therefore, subsection (b) cannot apply, and if Watt is to receive benefits, it must be under subsection (a).

In <u>Bomely v. Mid-America Corp.</u>[4] and <u>Perry v. Sentry Ins. Co.</u>,[5] however, this Court departed from the analysis used in <u>Minton</u>. In both of those cases, we emphasized that the trial court must make a specific finding of fact regarding the disability caused by the second injury without consideration of any prior injury. <u>Bomely</u>, 970 S.W.2d at 934; <u>Perry</u>, 938 S.W.2d at 407-08. In other words, upon finding the employee to be permanently and totally disabled, the trial court must then make a finding regarding how much disability the second injury would have caused if it occurred to a person with no prior disability. See <u>Bomely</u>, 970 S.W.2d at 934. Thus, the Court directed that a determination of the degree of vocational disability should be made prior to assessing the effects of the injuries in isolation, instead of adding together the individual amounts of disability as had been done in <u>Minton</u>.

This new approach was more fully outlined in <u>Allen v. City of Gatlinburg</u>, 36 S.W.3d 73 (Tenn. 2001). In <u>Allen</u>, the employee suffered a first injury which caused a 20 percent disability to the body as a whole and then was permanently and totally disabled by a second injury. <u>Id.</u> at 74-75. The trial court found that the second injury caused 80 percent disability, apparently subtracting the prior percentage of 20 percent from the total 100 percent disability. <u>Id.</u> at 75, 77. The <u>Allen</u> Court, however, reversed this finding, noting that trial courts in Second Injury Fund cases must make an independent determination of the disability attributable to the second injury alone. The Court emphasized that "the percentage of disability awarded for the prior injury has no bearing on" the trial court's determination of the effects of the second injury. <u>Id.</u> at 77, n.4.

Implicit in this approach is a rejection of the premise that the individual disability percentages attributed to an employee's injuries must total 100 percent before he or she may be permanently and totally disabled. The Fund asserts that <u>Bomely</u> and <u>Perry</u> are not inconsistent with <u>Minton</u> because the employees in <u>Bomely</u> and <u>Perry</u> each had injuries from noncompensable sources. See <u>Bomely</u>, 970 S.W.2d at 931; <u>Perry</u>, 938 S.W.2d at 405-06. The employee in <u>Allen</u>, however, suffered only work-related injuries. See <u>Allen</u>, 36 S.W.3d at 74-75. Had we continued to accept, after <u>Bomely</u> and <u>Perry</u>, that an employee cannot be permanently and totally disabled unless the sum of individual disability percentages equals at least 100 percent, it would not have been necessary in <u>Allen</u> to insist that the trial court make an independent finding regarding the effects of the second injury, rather than simply subtracting the 20 percent attributed to the prior injury from a total of 100 percent.

We take this opportunity to reaffirm the approach followed in <u>Bomely</u>, <u>Perry</u>, and <u>Allen</u>. We hold that this line of cases has expanded the analysis beyond that of <u>Minton</u>, and we recognize that an employee may be permanently and totally disabled by the combined effects of multiple injuries whose individual disability percentages do not total 100 percent, even if prior injuries have not been aggravated by later injuries.

---

[4] 970 S.W.2d 929 (Tenn. 1998).

[5] 938 S.W.2d 404 (Tenn. 1996).

We are not persuaded by the Fund's contention that our holding today will result in trial courts "re-litigating" prior disability awards. We continue to hold that trial courts may not re-litigate prior workers' compensation awards and may not base an award of permanent and total disability on a finding that a prior workers' compensation settlement was too low. See Hale v. CNA Ins. Cos., 799 S.W.2d 659, 661 (Tenn. 1990) ("Concerns for judicial economy and finality of settlements in the context of workers' compensation litigation [lead] us to reject the . . . contention that a trial court in a subsequent proceeding is not bound by a prior judicial determination regarding the extent of disability stemming from a prior injury . . ."). Our proscription against the re-litigation of prior awards, however, does not preclude the trial court from considering the synergistic effects of multiple of disabling injuries. In many cases, the disability caused by multiple injuries, when combined, may significantly exceed that which would have been caused by either injury occurring independently. As this Court recognized in Lock v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania, "a combination of injuries to members of the body (in this case the arm and foot) has a greater disabling effect than the arithmetical sum of individual scheduled awards." 809 S.W.2d 483, 487 (Tenn. 1991). We find it reasonable to conclude that a finding of permanent and total disability where the sum of individual disability awards equals less than 100 percent represents not a re-litigation of a prior workers' compensation settlement, but a finding that the combined effects of the injuries have created a disability greater than that caused by the effects of the injuries when considered independently.

In sum, under the approach established in Bomely, Perry, and Allen, trial courts in Second Injury Fund cases must first determine whether the employee has been permanently and totally disabled by the combination of two or more injuries. As defined by statute, this inquiry involves a determination whether the employee has been "totally [incapacitated] . . . from working at an occupation which brings the employee an income." Tenn. Code Ann. § 50-6-207(4)(B) (1999 Repl.). The trial court may not reconsider the extent of disability caused by any prior compensable injury; prior courts' findings of disability must be given conclusive effect. The trial court is not barred, however, from concluding that the combined effects of two injuries are greater than the individual disability which would have been caused by those injuries in isolation, so that an employee may be found permanently and totally disabled and may receive benefits under subsection (a) of the Second Injury Fund statute even though the individual percentages of disability attributable to the two injuries do not equal 100 percent when added together.

Applying this approach to the case under submission, we hold that the trial court properly found Watt to be permanently and totally disabled. We conclude that the trial court's finding did not involve a re-litigation of the prior hand injury; the trial court did not re-assess the disability attributed to the first injury, nor did it suggest in any fashion that Watt's hand injury in isolation caused more than 50 percent disability to that scheduled member. Instead, the trial court plainly concluded that Watt's disability had been caused by the combined effects of both injuries. Accordingly, regardless of whether the individual percentages of disability attributed to the two injuries equates to less than 100 percent to the body as a whole, we affirm the trial court's award of permanent and total disability.

### B.  Allocation of Liability for Benefits

Having held that the trial court properly awarded Watt benefits for permanent and total disability, we next must address the allocation of those benefits between Lumbermens and the Fund. Lumbermens asks that its liability be limited to 200 weeks, the amount it would have paid to Watt for loss of a leg had he not suffered a prior injury.  Certainly, some prior statements of this Court would seem to suggest that this would be the proper allocation.  See, e.g., Minton v. State Indus., Inc., 825 S.W.2d 73, 76-77 (Tenn. 1992) (noting that "the employer [in Second Injury Fund cases] is liable only for the disability that would have resulted from the subsequent injury without consideration of the first," and concluding that the employer's liability in that case could not exceed "100 percent of the lower extremity or 200 weeks").  In Bomely v. Mid-America Corp., however, this Court established that the employer's liability in Second Injury Fund cases is not limited to the 400 weeks available for permanent partial disability to the body as a whole. 970 S.W.2d 929, 931-32 (Tenn. 1998).  Instead, awards of permanent and total disability are apportioned between the employer and the Fund based on a percentage of the total number of weeks to age 65.  Id.  In this case, the trial court found Watt's second injury caused a 100 percent disability to the leg, which equates to a 50 percent disability to the body as a whole.  We conclude that the evidence supports that finding.  Accordingly, it properly apportioned 50 percent of the liability for permanent and total disability benefits to Lumbermens, with the remaining benefits to be paid by the Fund.  See Tenn. Code Ann. § 50-6-208(a)(1999 Repl.) (noting that when subsection (a) applies, the employer is liable for the percentage of disability caused by the second injury, and the Second Injury Fund is liable for the remainder of permanent and total disability benefits).  The trial court's finding on this issue is affirmed.

### IV.  Conclusion

For the foregoing reasons, we hold that the trial court properly concluded that Watt may receive an award of permanent and total disability benefits, and we further hold, based on the trial court's finding that Watt's last injury was responsible for 50 percent of Watt's disability, that the trial court's allocation of liability for benefits between the Fund and Lumbermens was proper. Accordingly, the judgment of the trial court is affirmed.  Costs on appeal are taxed to the Second Injury Fund, for which execution may issue if necessary.

 

 

_____
ADOLPHO A. BIRCH, JR., JUSTICE