# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
October 6, 2004 Session at Nashville

# BILLY GENE GRAY v. CULLOM MACHINE, TOOL & DIE, INC., Et al.

**Direct Appeal from the Circuit Court for Bradley County**
**No. V-01-061     Lawrence Puckett, Judge**

---

**No. E2004-00011-SC-R3-CV - Filed December 20, 2004**

---

We granted review in this workers' compensation case to determine whether the trial court erred in 1) awarding temporary total benefits, 2) apportioning liability between the employer and the Second Injury Fund, and 3) awarding 180 weeks of lump-sum benefits. After reviewing the record and applicable authority, we conclude that the trial court erred in awarding temporary total benefits to the employee who continued to work for the employer following his injury and then later operated his own unprofitable business. We also hold that the trial court erred in limiting the employer's liability for permanent total disability benefits to 60% of 400 weeks and in awarding 180 weeks of lump sum benefits. Accordingly, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

**Tenn. Code Ann. § 50-6-225(e); Judgment of the Trial Court Reversed**

E. RILEY ANDERSON, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and JANICE M. HOLDER, WILLIAM M. BARKER, JJ., and ALLEN W. WALLACE, SP.J., joined.

Paul G. Summers, Attorney General and Reporter; and Richard M. Murrell, Assistant Attorney General, Nashville, Tennessee, for the Appellant, Second Injury Fund.

Robert J. Uhorchuk, Chattanooga, Tennessee, for the Appellees, Cullom Machine, Tool & Die, Inc., and Travelers Insurance Company.

William J. Brown, Cleveland, Tennessee, for the Appellee, Billy Gene Gray.

## OPINION

On May 26, 2000, the employee, Billy Gray ("Gray"), suffered an injury to his left shoulder while in the course and scope of his employment with Cullom Machine, Tool & Die, Inc. ("Cullom")

in Cleveland, Tennessee. After Gray filed a workers' compensation claim, the following evidence was presented before the trial court.[1]

Gray, who was fifty years old at the time of the injury, testified as follows. At age eighteen, he joined the United States Marine Corps and served in Vietnam where he suffered injuries to his hands, hip, knee, and thigh from a mortar attack. After spending over a year in military hospitals and undergoing numerous surgeries, his right hand was permanently impaired, which prevented him from curling his fingers and reduced his range of motion. As a result, he received a permanent 60% disability rating from the Veterans Administration.

After being discharged from the military, Gray worked for National Fiberglass Products in Chicago, Illinois. While in the course and scope of his employment, he was struck in his left eye with a high-pressured fiberglass spray. The injury scarred his cornea and caused a 15% loss of sight for which he received workers' compensation benefits. Seven years later, Gray underwent an unsuccessful corneal transplant procedure that resulted in complete blindness in his left eye.

Gray began working as a machinist for Cullom in 1988 and had worked for approximately twelve years before his injury, during which time he was promoted to supervisor. On May 26, 2000, he was struck in the head and left shoulder by a large, heavy steel tube while loading materials onto a truck. The force of the blow knocked Gray to the ground and rendered him unconscious. He was taken to the hospital and received nearly 100 stitches in his head. Although Gray had pain in his left shoulder, he initially received conservative treatment and continued to work for Cullom. Because the pain in his left shoulder continued to worsen, Gray elected to have surgery to repair his left rotator cuff on November 2, 2000. Gray did not return to work at Cullom after his surgery because the company had reduced its number of supervisors and the injury to his left shoulder prevented him from doing machinist work.

After leaving Cullom, Gray began Gray Tool Service, a tool sharpening business, which he operated from November 2000 to October of 2002. He said that he met with customers, answered phones, hired employees, delivered tools to his customers, and often worked from 9:00 a.m. to 9:00 p.m. or longer. He eventually closed the business because it was not profitable.

Dr. Julian Nadowski, a vocational expert, testified at trial that Gray had an 80% vocational disability rating as a result of his shoulder injury. The expert concluded that he "would not be able to go back to work as a machinist in his regular trade" and that he "would essentially be confined to a relatively narrow range of unskilled jobs."

Dr. Daniel Johnson, a board-certified orthopedic surgeon, testified by deposition as follows. After examining Gray on June 22, 2000, he diagnosed Gray as having suffered a left rotator cuff tear and/or avulsion. An MRI showed an "abnormal signal within the left rotator cuff consistent with

---

[1] The trial court initially held a trial on the issue of temporary total benefits and later held a trial on the issue of permanent benefits.

a partial tear and an effusion of the left shoulder." Gray underwent conservative treatment, including physical therapy and pain management, and was told to avoid reaching overhead or to the side.

Gray reported increased pain in October of 2000 and elected to have surgery on his shoulder. On November 2, 2000, Dr. Johnson surgically repaired the left rotator cuff tear and a superior glenoid rim tear. He believed that the surgery went "as well as could be expected" but thought that Gray would have "some problems with his shoulder the rest of his life." Gray showed improvements in strength and range of motion in January and February of 2001, and Dr. Johnson assigned a 10% impairment rating of the upper extremity.

Early in 2003, Gray reported additional pain. Dr. Johnson determined that Gray had lost strength and movement in his left shoulder, and he performed additional surgery to repair an avulsion to the rotator cuff. Dr. Johnson concluded that the initial impairment rating had been made prematurely and that Gray did not reach maximum medical improvement until February 24, 2003. Accordingly, Gray was assigned a 30% permanent impairment to the upper extremity or an 18% permanent impairment to the body as a whole.

The trial court accredited Dr. Johnson's testimony[2] and found that Gray's injury while working for Cullom accounted for 60% of his permanent and total disability. In addition to ordering Cullom to pay temporary total disability benefits for the period of June 2000 to February 2003, the trial court also ordered Cullom to pay 60% of the permanent total benefits for the first 400 weeks, i.e., 240 weeks, and ordered the Second Injury Fund to pay all remaining benefits, i.e., 401 weeks, until Gray was eligible for social security benefits. The trial court also ordered lump sum benefits totaling 180 weeks.

Both Cullom and the Second Injury Fund appealed the trial court's ruling. We accepted review before the case was heard or considered by the Special Workers' Compensation Appeals Panel.

## ANALYSIS

### *Standard of Review*

Our standard of review of factual issues in a workers' compensation case is de novo upon the record of the trial court, accompanied by a presumption of correctness of the trial court's factual findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (Supp. 2004); Houser v. Bi-Lo, Inc., 36 S.W.3d 68, 70-71 (Tenn. 2001). When the trial court has seen the witnesses and heard the testimony, especially where issues of credibility and the weight of testimony are involved, the appellate court must extend considerable deference to the trial court's factual findings. Houser, 36 S.W.3d at 71.

---

[2] The trial court discounted the deposition testimony of Dr. Neal Spitalny, an orthopedic surgeon who had stated that Gray had a 10% impairment to the upper left extremity.

Our standard of review of legal issues, such as statutory interpretation, is de novo. <u>Tucker v. Foamex, L.P.</u>, 31 S.W.3d 241, 242 (Tenn. 2000). Moreover, we must interpret workers' compensation statutes "'to promote and adhere to [their] purposes of securing benefits to those workers who fall within [their] coverage.'" <u>Allen v. City of Gatlinburg</u>, 36 S.W.3d 73, 75 (Tenn. 2001) (quoting <u>Lindsey v. Smith & Johnson, Inc.</u>, 601 S.W.2d 923, 925 (Tenn. 1980)).

### *Temporary Total Disability*

The first issue presented is whether the trial court erred in awarding temporary total disability benefits for the period of June 2000 to February 2003. Cullom argues that Gray was not totally disabled because he continued to work for Cullom until November 2000 and then began and worked in his own tool-sharpening business until October 2002.

On the other hand, Gray contends that the trial court's ruling was supported by the fact that he was found totally and permanently disabled at the time of maximum medical improvement in February 2003. Although Gray concedes that he operated a business from November 2000 to October 2002, he argues that the business was not profitable.

Temporary total disability refers to an "'injured employee's condition while disabled to work by his injury and until he recovers as far as the nature of his injury permits.'" <u>Anderson v. Dean Truck Line, Inc.</u>, 682 S.W.2d 900, 903 (Tenn. 1984) (quoting <u>Redmond v. McMinn County</u>, 354 S.W.2d 435, 437 (Tenn. 1962)); <u>see also</u> Tenn. Code Ann. § 50-6-207(1)(A) (Supp. 2004). To establish a prima facie case of entitlement to receive temporary total disability benefits, an employee must show (1) that he or she was totally disabled and unable to work due to a compensable injury, (2) that there was a causal connection between the injury and his inability to work, and (3) the duration of the period of disability. <u>Cleek v. Wal-Mart Stores, Inc.</u>, 19 S.W.3d 770, 776 (Tenn. 2000).[3] Temporary total disability benefits ensure that the employee may receive compensation during "'the healing period during which the employee is totally prevented from working.'" <u>Id.</u> (quoting <u>Gluck Bros., Inc. v. Coffey</u>, 431 S.W.2d 756, 759 (Tenn. 1968)).

In <u>A.C. Lawrence Leather Co. v. Loveday</u>, 455 S.W.2d 141 (Tenn. 1970), this Court concluded that the trial court erred in awarding temporary total disability benefits for a period during which an employee worked at another job. <u>Id.</u> at 144. Moreover, this Court emphasized that the period of temporary total disability ended even though the employee was in constant pain or needed to work because of economic necessity. <u>Id.</u> In short, when an employee "becomes able to work at any employment permitted by the nature of his injuries, temporary total disability ends at that time." <u>Anderson</u>, 682 S.W.2d at 903.

---

[3] In <u>Cleek</u>, we also held that a period of temporary total disability benefits may be revived if there is evidence that an initial assessment of impairment or maximum medical improvement was incorrect or premature. 19 S.W.3d at 777-78.

-4-

Here, the record does not support the trial court's judgment granting temporary total disability benefits for the period of June 2, 2000 to November 2, 2000. After his injury on May 26, 2000, Gray continued to work for Cullom until November 2, 2000. Although Gray testified that he was in pain while continuing to work during this time, there was simply no showing that he was not able to work and was totally disabled as a result of the injury. Cleek, 19 S.W.3d at 776. Accordingly, the trial court erred in awarding temporary total benefits for the period of June 2, 2000 to November 2, 2000.

In addition, the record does not support the trial court's judgment granting temporary total disability benefits for the period of November 2, 2000 to October of 2002. Gray testified that he had intended to return to work following surgery on his left shoulder but that his position with Cullom had been terminated. He then started his own tool-sharpening business in November of 2000 because he needed money to pay his living expenses. Although he was forced to compensate for the loss of strength and movement in his left shoulder, Gray said that he met with customers, handled office work, and made deliveries. Gray stated that he routinely worked twelve or more hours per day before finally closing the business because it failed to make a profit.

Gray's testimony demonstrated that he started and operated his own tool-sharpening business and, in the process, worked long hours and engaged in both physical and administrative tasks. This was consistent with his history of overcoming and adjusting to previous serious military and industrial injuries with a strong work ethic and the desire to support his family. Although his business did not make a profit, the standard for awarding temporary total disability benefits is not profitability, but rather an employee's ability to work. See Anderson, 682 S.W.2d at 903. Accordingly, the trial court erred in awarding temporary total benefits for the period of November 2, 2000 to October of 2002.

Finally, the record does not contain sufficient factual findings to support the trial court's award of temporary total benefits for October 2002 to February 2003. It may be that Gray's condition worsened during this period since Gray was no longer operating his own business and had returned to Dr. Johnson for further treatment. On the other hand, Gray testified that he was no longer operating his tool sharpening business solely because it was not profitable, which may indicate that he was still able to work. Accordingly, the trial court should conduct further proceedings and make factual findings on this issue.

To summarize, we conclude that the trial court erred in awarding temporary total disability benefits. We therefore remand the case for a determination of the credit owed to Cullom for the temporary total disability benefits it paid from June 2000 to October 2002, and for a determination of whether temporary total disability benefits may be awarded for the period of October 2002 to February 2003.

*Apportionment*

The second issue presented for resolution is whether the trial court erred in holding Cullom liable for 60% of only 400 weeks (i.e., an award of 240 weeks) of Gray's compensation for permanent and total disability, rather than 60% of the benefits due until Gray was eligible for social security (i.e., an award of 401 weeks). The State of Tennessee's Second Injury Fund ("Second Injury Fund") argues that the trial court erred because this case is controlled by Bomely v. Mid-America Corp., 970 S.W.2d 929 (Tenn. 1998). Conversely, Cullom argues that the trial court's apportionment was supported by the evidence. The employee, Gray, takes no position on this issue.

The Second Injury Fund was created to encourage employers to hire employees who have had prior injuries. Bomely, 970 S.W.2d at 932; see also Tenn. Code Ann. § 50-6-208(a)(1) (1999 & Supp. 2004). This purpose is achieved by limiting an employer's liability for a later injury that results in an employee's permanent and total disability to the compensation due for the later injury without consideration of any prior injury or injuries. The remainder of the compensation is paid to the employee by the Second Injury Fund. See Tenn. Code Ann. § 50-6-208(a)(1)–(3) (1999 & Supp. 2004).

In allocating liability between the employer and the Second Injury Fund where an employee has suffered permanent partial or total disability, this Court has held that an employer is not limited to a percentage of 400 weeks. Bomely, 970 S.W.2d at 932-33; see also Watt v. Lumbermens Mut. Cas. Ins. Co., 62 S.W.3d 123, 132 (Tenn. 2001). As we explained in Bomely,

> It is not equitable to cap the employer's liability at 400 weeks and require the Fund to pay the bulk of the award in light of the fact that Tenn. Code Ann. § 50-6-102(a)(6)(C) specifically exempts permanent total disability awards from the 400 week maximum total benefit limitation and Tenn. Code Ann. § 50-6-207(4)(A)(i) authorizes benefits to age 65 in cases of permanent and total disability.

970 S.W.2d at 932. Moreover, we concluded that "[i]f the legislature had wanted to cap an employer's liability at 400 weeks where benefits are awarded to age 65 in cases involving the Second Injury Fund it could have easily done so." Id.

In this case, the trial court erred in limiting Cullom's liability for Gray's permanent and total disability to 60% of 400 weeks (i.e., an award of 240 weeks). The parties agree that the trial court correctly determined that Gray had a permanent and total disability and that 60% of this disability was due to his injury on May 26, 2000. As a result, the trial court was required to hold that Cullom was responsible for 60% of Gray's permanent and total disability until he reached the age of eligibility for social security (i.e., an award of 401 weeks) and that the Second Injury Fund was responsible for the remainder (i.e., an award of 268 weeks). See Bomely, 970 S.W.2d at 932. Accordingly, we remand to the trial court for a redetermination of the permanent total disability benefits due to Gray and the relative responsibilities of Cullom and the Second Injury Fund.

-6-

*Lump Sum*

The final issue is whether the trial court erred in commuting 180 weeks of benefits to a lump sum. Cullom argues that the trial court erred because a lump-sum payment cannot exceed 100 weeks under Tennessee Code Annotated section 50-6-207(4)(A)(ii) (Supp. 2004). Cullom also argues that the trial court improperly accelerated the payment of Gray's remaining benefits by refusing to reduce the weekly rate at which they were to be paid. Gray maintains that the lump sum was appropriate because it included amounts for attorney's fees and Gray's pre-injury debt which was in arrears.

This issue requires an examination of Tennessee Code Annotated section 50-6-207(4)(A)(ii) (Supp. 2004), which states in part that permanent total disability payments shall not be commuted to a lump sum except in accordance with the following:

> (a) Benefits may be commuted to a lump sum to pay only the employee's attorney's fees and litigation expenses and to pay pre-injury obligations in arrears;

> (b) The commuted portion of an award shall not exceed the value of one hundred (100) weeks of the employee's benefits;

> (c) After the total amount of the commuted lump sum is determined, the amount of the weekly disability benefit shall be recalculated to distribute the total remaining permanent total benefits in equal weekly installments beginning with the date of entry of the order and terminating on the date the employee's disability benefits terminate . . . .

Tenn. Code Ann. § 50-6-207(4)(A)(ii) (Supp. 2004). Because lump sum awards are an exception to the general purpose of providing injured workers with periodic payments that substitute for wages, this Court has emphasized that commutation "should occur only in exceptional circumstances, and not as a matter of course." Henson v. City of Lawrenceburg, 851 S.W.2d 809, 814 (Tenn. 1993).

Although the record reflects that the trial court properly considered attorney's fees and Gray's arrearages for pre-injury obligations in awarding lump sum benefits, the trial court erred in the extent of its award which totaled 180 weeks. The plain language of the statute provides that "the commuted portion of an award shall not exceed the value of one hundred (100) weeks of the employee's benefits . . . ." Tenn. Code Ann. § 50-6-207(4)(A)(ii)(b) (Supp. 2004). Given that the term "shall" is mandatory, the statutory language is unambiguous and must be applied as written. See Limbaugh v. Coffee Med. Ctr., 59 S.W.3d 73, 83 (Tenn. 2001). Accordingly, this case must be remanded to the trial court for a redetermination of lump sum benefits, which may not exceed 100 weeks.

In addition, the record shows that after awarding lump sum benefits, the trial court erred in refusing to reduce the weekly rate at which the remaining payments were to be made. See Tenn.

Code Ann. § 50-6-207(4)(ii)(c) (Supp. 2004) ("After the total amount of the commuted lump sum is determined, the amount of the weekly disability benefit shall be recalculated to distribute the total remaining permanent total benefits in equal weekly installments . . . ."). In our view, reducing the weekly rate ensures that the employee will receive payments throughout the entire period of disability, serves as a more effective substitute for regular wages, and avoids forcing employers to make payments on an accelerated schedule. Accordingly, on remand, the trial court shall make a determination as to the lump sum benefits and shall then calculate the weekly rate at which Cullom shall pay the remaining benefits by using the full period of Gray's disability.

## CONCLUSION

After reviewing the record and applicable authority, we conclude that the trial court erred in awarding temporary total benefits to the employee who continued to work for the employer following his injury and then operated his own unprofitable business. We also hold that the trial court erred in limiting the employer's liability for permanent total disability benefits to 60% of 400 weeks, rather than 60% of the benefits due until the employee's eligibility for social security benefits. Finally, we hold that the trial court erred in awarding 180 weeks of lump-sum benefits and in failing to reduce the weekly rate of remaining benefits over the full period of disability. Accordingly, we reverse the trial court's judgment and remand for a redetermination of benefits and further proceedings consistent with this opinion. Costs of the appeal are taxed one-half to the appellee, Billy Gene Gray, and one-half to the appellees, Cullom Machine, Tool & Die, Inc., and Travelers Insurance Company.

 

_____
E. RILEY ANDERSON, JUSTICE