**FILED**

**May 3, 2016**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 9:58 AM



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | | |
|---|---|---|
| Roxanna Marie Hazy Kelso, | ) | Docket No.: 2015-01-0413 |
| **Employee,** | ) | |
| v. | ) | State File No.: 91781-2015 |
| Five Star Food Service, | ) | |
| **Employer,** | ) | Judge Thomas Wyatt |
| And | ) | |
| Accident Fund Ins. Co., | ) | |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

This case came before the undersigned Workers' Compensation Judge on April 22, 2016, upon the Request for Expedited Hearing filed by the employee, Roxanna Marie Hazy Kelso, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The parties focused on two points for determination at the Expedited Hearing: (1) whether Ms. Kelso complied with the applicable statute of limitations, and, (2) whether Ms. Kelso established she sustained a compensable injury while employed by Five Star Food Service (Five Star). For the reasons set forth below, the Court finds Ms. Kelso is entitled to medical benefits for her bilateral upper extremity injuries, but is not entitled to the requested temporary total disability benefits.[1]

### History of Claim

Ms. Kelso is a fifty-two-year-old resident of Bradley County, Tennessee. (T.R. 1 at 1.) At various times between August 27, 2012, and September 15, 2015, she performed duties as a cook, salad bar preparer, dish washer and server at two cafeterias operated by Five Star in Bradley County, Tennessee. (*Id.;* Ex. 2 at 1.)[2]

---

[1] A complete listing of the technical record and exhibits admitted at the expedited hearing is attached to this Order as an appendix.

[2] From August 2014 until June 2015, Five Star assigned Ms. Kelso to less strenuous managerial duties due to a work-related back injury.

1

On an uncertain date prior to July 1, 2014, Ms. Kelso developed bilateral upper extremity pain, numbness, and tingling while performing repetitive duties such as cutting and slicing food, scraping grease from kitchen equipment, cooking, sweeping and mopping in the course and scope of her employment by Five Star. The parties assigned a July 1, 2014 date of injury and an adjuster for Key Risk Management[3] offered Ms. Kelso a panel from which she selected Dr. Rickey L. Hutcheson as the authorized treating physician. (Ex. 9).

Ms. Kelso saw Dr. Hutcheson on August 12, 2014. (Ex. 13 at 1.) Dr. Hutcheson noted Ms. Kelso told him she underwent right hand carpal tunnel syndrome surgery in 1993. *Id.* He further noted she did not identify a single injury accounting for her current symptoms, but told him her symptoms developed over several months. *Id.*

Dr. Hutcheson took x-rays that showed mild degenerative changes in Ms. Kelso's thumbs. He opined, "most of her symptoms are arthritic in nature and associated with her fibromyalgia more than anything else." (Ex. 13 at 2.) He further noted that he told Ms. Kelso "she could potentially have carpal tunnel right now but, even if she does, she has significant co-morbidities associated with it." *Id.*

Dr. Hutcheson released Ms. Kelso to return to work without restrictions and instructed her to treat her pain with over-the-counter anti-inflammatory medication. (Ex. 13 at 3.) At some point during August 2014, Five Star assigned Ms. Kelso managerial duties that allowed her to perform less repetitive work. (Ex. 10 at 1.) On September 2, 2014, Five Star denied the compensability of Ms. Kelso's upper extremities claim by filing a Notice of Denial stating: "MD has determined that claimant['s] complaints of pain are not work-related." (Ex. 12.)

Ms. Kelso continued working at Five Star after the denial of her claim. Her managerial job required her to perform less repetitive work with her hands. Ms. Kelso testified her upper extremity pain "got better" during the period she worked as a manager. However, in June 2015, Five Star returned her to her regular job, which necessitated more repetitive hand-intensive work. (T.R. 1 at 1; Ex. 15 at 1.) Ms. Kelso testified her bilateral upper extremity pain recurred and worsened after she returned to "labor" in June 2015.

Ms. Kelso testified she did not immediately report her recurrent pain as a work injury because Five Star denied the claim she made in 2014 based on similar symptoms. She instead opted for evaluation by a personal physician because, in her opinion, workers' compensation doctors work for the company instead of the injured employee. Ms. Kelso's private physician, Dr. Maria Tomczyk, referred her to Athens Neurology Clinic for a nerve conduction study/EMG. Dr. Eteri Bibileishvlli tested Ms. Kelso's

---

[3] Accident Fund was not Five Star's carrier on July 1, 2014. (Ex. 15 at 1.)

2

upper extremities on August 26, 2015, and concluded she had a normal examination with the exception of a finding, "consistent with a mild median neuropathy across the [left] wrist (carpal tunnel syndrome)." (Ex. 7.)

On September 2, 2015, Ms. Kelso e-mailed management personnel at Five Star, discussing numerous allegedly work-related physical symptoms. (Ex. 5.) She included the following discussion in the September 2 e-mail:

> Last year you sent me to Dr. Hutchenson [sic] in Cleveland for pain in both my hands and he took x-rays and said it was arthritis not carpal tunnel. Well he was right on the right hand it is only arthritis but my left hand is carpal tunnel at moderate stage. I went and had a nerve conduction test done to prove it since workers comp doctors work for the insurance companies and not the employees who are hurt. I will be forwarding you the results when I get the written ones. The doctor told me the result when she did the test.

*Id.*

Following Ms. Kelso's e-mail, Five Star turned the matter over to Accident Fund, the carrier then insuring it for workers' compensation risks. An Accident Fund adjuster offered Ms. Kelso a panel, to which she objected because it listed names of clinics as opposed to names of individual physicians. (Ex. 1.) Ms. Kelso testified she worked as long as she could with pain from several physical ailments, including recurrent upper extremity pain.[4] Ms. Kelso testified she last worked at Five Star on September 15, 2015, and has not worked anywhere since.

In October 2015, Ms. Kelso e-mailed a Petition for Benefit Determination (PBD) to the Bureau of Workers' Compensation, listing a July 1, 2014 date of injury. (Ex. 15 at 1-2.) She described her injury in the PBD as follows:

> I was sent to Dr. Rickey Hutcheson on 8/12/15[5] for an injury dated 7/01/2014 on my hands. Dr. Hutcheson took x-rays and told me it was arthritis and fine to go back to work fulltime with no restrictions. I continued to have lots of pain and in August 2015 I asked my regular doctor to order the nerve conduction exam. Results included. I was told by Jennifer Hudson there was nothing I could do.

*Id.* at 1.

---

[4] Ms. Kelso testified back pain, pain in her feet, knee pain, shoulder pain, and pain from fibromyalgia combined with her upper extremity pain disabled her beginning September 15, 2015.

[5] Dr. Hutcheson's records show he actually saw Ms. Kelso on August 12, 2014.

3

Ms. Kelso testified that a representative of the Bureau named "Cheryl" told her she filed the PBD "too late" to obtain benefits on the July 1, 2014 date of injury. Ms. Kelso testified she withdrew this PBD pursuant to Cheryl's suggestion. Ms. Kelso further testified that Cheryl also suggested she file a PBD listing an August 26, 2015 date of injury based on the fact she learned her carpal tunnel diagnosis on that date. Ms. Kelso testified she followed Cheryl's suggestion and, on November 20, 2015, filed the PBD that initiated this claim. (T.R. 1 at 1.) She described her injury in this PBD in the same manner as she did in the original PBD. (*Id.*; Ex. 15 at 1.)

On cross-examination, Ms. Kelso testified that, when she filed the first PBD, she assumed her then-current upper extremity symptoms related back to the problem she reported in July 2014. She testified she believed the July 2014 problems were due to carpal tunnel syndrome, but had no medical proof of that diagnosis because Dr. Hutcheson told her she had arthritis.

On December 2, 2015, Ms. Kelso gave a statement to Greg Hurd, an adjuster for Accident Fund. Mr. Hurd completed an injury report from the information provided by Ms. Kelso during the statement. (Ex. 2 at 2.) On December 4, 2015, Mr. Hurd completed a First Report of Injury listing that Ms. Kelso gave a date of injury of August 26, 2015. (Ex. 4.) In both documents, Mr. Hurd reported that Ms. Kelso told him she suffered injury while "cutting, slicing and grilling." (Ex. 2 at 1; Ex. 4.) On December 21, 2015, Accident Fund issued a Notice of Denial of Ms. Kelso's August 26, 2015 injury because, "[i]njury was not in the course and scope of employment."[6] (Ex. 11.)

Ms. Kelso requested this Expedited Hearing on March 8, 2016. (T.R. 3.) She represented herself during the hearing, at which Attorney Gordon Aulgur represented Five Star and Accident Fund. Ms. Kelso contended the cutting, slicing, sweeping, mopping, and other repetitive use of her hands at Five Star caused the injury that forms the basis of this PBD. She claimed her return to repetitive work in June 2015 caused recurrence of the bilateral upper extremity symptoms that had improved while performing managerial duties. Ms. Kelso also asserted she did not know she had carpal tunnel syndrome until she received the results of the diagnostic testing on August 26, 2015. Accordingly, she argued she timely filed this action when she filed the November 20, 2015 PBD.

In addition, Ms. Kelso claimed entitlement to temporary total disability benefits because the disability arising from her hand and upper extremity injuries accounts as much for her disabled condition since September 2015, as do her other ailments. She asked for an award of temporary total disability benefits beginning September 15, 2015,

---

[6] Five Star and Accident Fund included their statute of limitations defense in the Dispute Certification Notice. (T.R. 2.)

the last date she worked for Five Star.

Five Star argued Ms. Kelso has a sophisticated understanding of workers' compensation claims, since she participated with counsel in settling her back injury claim. It insisted her upper extremity pain began on July 1, 2014, and the filing of her PBD in November 2015, more than a year after the date of injury, was untimely. Five Star also contended Ms. Kelso's claim must fail because she did not introduce expert medical opinion establishing the compensability of her alleged injuries and disability.

## Findings of Fact and Conclusions of Law

The Court applies the following general legal principles in determining the issues in this Expedited Hearing. Ms. Kelso bears the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). Ms. Kelso need not, however, prove every element of her claim by a preponderance of the evidence in order to obtain relief at an Expedited Hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Rather, she has the burden to come forward with sufficient evidence from which the Court can determine that she is likely to prevail at a hearing on the merits in establishing that her injury arose primarily out of and in the course and scope of employment. *Id.* This lesser evidentiary standard does not relieve Ms. Kelso of the burden of producing evidence of a compensable injury, but allows the Court to grant some relief if that evidence does not rise to the level of a preponderance of the evidence. *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

### *Statute of Limitations*

Five Star insists that Ms. Kelso's claim must fail because she filed her PBD on November 20, 2015, more than one year after the July 1, 2014 date of injury. Five Star's position relies on Tennessee Code Annotated section 50-6-203(b)(1) (2015), which requires that, in claims where an employer has not paid benefits, an injured worker file a PBD "within one (1) year after the accident resulting in injury." *Id.* Ms. Kelso urges that the Court establish August 26, 2015, as the date of injury because she suffered re-injury after she returned to her "labor" job in June 2015, and because she did not learn of her carpal tunnel diagnosis until August 26, 2015.

The parties' positions ignore the governing legal authority on the statute of limitations issue. In *Maples v. Federal-Mogul Corp.,* No. 2015-04-0039, 2016 TN Wrk. Comp. App. Bd. LEXIS 8, at *24-28 (Tenn. Workers' Comp. App. Bd. Feb. 17, 2016), the Workers' Compensation Appeals Board noted, in a claim arising prior to the passage

5

of the 2013 reforms to the Workers' Compensation Law, the Supreme Court in *Lawson v. Lear Seating Corp.,* 944 S.W.2d 330, 342 (Tenn. 1997), held that the limitations period in repetitive injury cases begins to run the day the injured employee last worked in the job allegedly resulting in injury. The Appeals Board in *Maples* considered whether the "last day worked" rule should apply to repetitive injuries arising after July 1, 2014, and determined the rule "remains viable" following the 2013 Workers' Compensation reforms. *Maples, supra,* at *28.

The injury for which Ms. Kelso seeks benefits allegedly arose because of repetitive use of her hands and upper extremities at Five Star. Ms. Kelso testified she last worked at Five Star on September 15, 2015. She introduced a note indicating Dr. Tomczyk took her off work on September 15, 2015. (Ex. 8.) Five Star did not rebut the above-described evidence. Accordingly, the Court finds Ms. Kelso is likely to prevail at a hearing on the merits in establishing she last worked at Five Star on September 15, 2015. In view of that finding, the PBD Ms. Kelso timely filed her PBD on November 20, 2015, thus Five Star's statute of limitations defense is without merit.[7]

## *Causation*

Ms. Kelso did not introduce evidence at the Expedited Hearing establishing the work-relatedness of her bilateral upper extremity pain. She introduced a nerve conduction study/EMG report that contains a diagnosis of left carpal tunnel syndrome. (Ex. 7.) This report, however, does not include an opinion as to the work-relatedness of this diagnosis. Ms. Kelso also introduced a functional capacity evaluation report. (Ex. 6.) This report contains results of strength testing on Ms. Kelso's hands, but does not include expert medical opinion as to either the diagnosis or cause of what, if any, condition she may have had in her hands or upper extremities at the time she underwent the testing. *Id.* at 4. In view of the absence of medical proof of the work-relatedness of Ms. Kelso's injury, the Court agrees with Five Star's contention that Ms. Kelso did not establish her bilateral upper extremity pain arose primarily out of and in the course and scope of her employment.

However, in view of the authority established by the *McCord* and *Buchanan* opinions cited above, Ms. Kelso's failure to establish the compensability of her alleged injuries during the Expedited Hearing does not end the inquiry into whether she is entitled to medical benefits. In *Lewis v. Molly Maid,* No. 2015-06-0456, 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *7-9 (Tenn. Workers' Comp. App. Bd. Apr. 20, 2016), the Appeals Board upheld an award of medical benefits where, at an Expedited Hearing, an

---

[7] Ms. Kelso did not introduce medical evidence establishing she reinjured her hands and upper extremities after she returned to her "labor" work in June 2015. This fact does not change the outcome on the statute of limitations issue, in that the "last day worked" rule applies whether Ms. Kelso's date of injury was July 1, 2014, the date in June 2015, when she experienced recurrent symptoms after returning to her regular job, or August 26, 2015, when she learned about her carpal tunnel syndrome diagnosis.

employee failed to introduce evidence that her injury arose out of and in the course and scope of employment, holding:

> [w]e agree [with the trial court] that Employee came forward with sufficient evidence to support a conclusion that she experienced back pain after operating a vacuum cleaner[.] We also agree that while this evidence was insufficient to establish the compensability of the claim by a preponderance of the evidence, it was sufficient to support an order compelling Employer to provide a panel of physicians.

*Id.* at \*8-9.

The Court finds that a result similar to that in *Lewis* is appropriate here. The Court observed Ms. Kelso's in-person testimony and finds she testified clearly and without hesitation that her repetitive work at Five Star caused her to experience the hand and upper extremity pain she reported as a work injury on July 1, 2014. She also testified that, after Five Star re-assigned her in June 2015 to "labor" work after she had performed less strenuous managerial duties for a year, she experienced a recurrence and worsening of her earlier-reported hand and upper extremity symptoms. The Court finds her testimony on these points credible. The Court also finds Ms. Kelso's September 2, 2015 e-mail (Ex. 5) provided Five Star sufficient notice that she claimed her upper extremity injuries were work-related. In view of the above, the Court finds Five Star wrongfully denied Ms. Kelso's workers' compensation claim following the June 2015 recurrence of her upper extremity symptoms.

Accordingly, Five Star shall provide Ms. Kelso a panel of "independent reputable physicians, surgeons, chiropractors, or specialty practice groups" specializing in the treatment of hand and upper extremity conditions. Tenn. Code Ann. § 50-6-204(a)(3)(A)(1) (2015). Ms. Kelso shall select an authorized treating physician for treatment of her bilateral hand and upper extremity injuries from the proffered panel. Once Ms. Kelso makes her selection, Five Star and/or its carrier shall promptly schedule her with the selected physician.

### Temporary Total Disability Benefits

In addition to medical benefits, Ms. Kelso seeks temporary total disability benefits for her upper extremity injuries. She claims entitlement to said benefits from September 15, 2015, the last date she worked, to the present.

An employee seeking temporary total disability benefits as contemplated in Tennessee Code Annotated section 50-6-207(1) (2015) must show that (1) he or she was totally disabled from work as a result of a compensable injury; (2) that a causal connection exists between the injury and the employee's inability to work; and (3) the

duration of the period of the employee's disability. *Jewell v. Cobble Constr. and Arcus Restoration,* No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. 1, at *21 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015), *citing Gray v. Cullom Mach., Tool & Die, Inc.,* 152 S.W.3d 439, 443 (Tenn. 2004). Tennessee Code Annotated section 50-6-102(14)(C) (2015) requires that the employee "show *to a reasonable degree of medical certainty* that [his or her work injury] contributed more than fifty percent (50%) in causing the . . . disability . . . considering all causes." (Emphasis added.) Accordingly, Ms. Kelso must establish the second requirement set forth above—the existence of a causal connection between her disability and her work—by medical expert opinion.

Ms. Kelso did not come forward with any expert medical opinion causally connecting her alleged disability to a work-related injury at Five Star. She introduced an off-work note signed by Dr. Tomczyk (Ex. 8), but that note does not identify the condition or conditions causing the underlying disability, nor does it establish the work-relatedness of her disability. Accordingly, the Court, at this time, denies Ms. Kelso's claim for temporary total disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. In accordance with Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015), Five Star and/or its carrier shall promptly provide a panel of physicians who are competent to treat carpal tunnel syndrome and other hand and upper extremity conditions, from which Ms. Kelso may select a physician authorized to treat her work-related bilateral upper extremity injuries.

2. Ms. Kelso's claim for temporary disability benefits is denied at this time.

3. This matter is set for an Initial (Scheduling) Hearing on June 7, 2016, at 9:00 a.m. Eastern Time. The parties shall call in to 855-747-1721 (toll-free) or 615-741-3061 to participate.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED** this the 3rd day of May, 2016.

**Thomas Wyatt, Judge**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Thomas Wyatt, Court of Workers' Compensation Claims. You must call 855-747-1721 (toll-free) or 615-741-3061 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of**

**Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the Workers' Compensation Judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:

1. Panel form (C-42) offered Ms. Kelso for August 26, 2015 injury;
2. Employee's Report of Injury completed December 2, 2015 by Five Star;
3. Wage Statement for alleged August 26, 2015 injury;
4. First Report of Injury for alleged August 26, 2015 injury;
5. September 2, 2015 e-mail from Ms. Kelso to Five Star management personnel;
6. November 10, 2015 Functional Capacity Evaluation Report ;
7. August 26, 2015 Nerve Conduction Study/EMG Report ;
8. September 15, 2015 Out-of-Work slip of Dr. Maria Tomczyk ;
9. Panel form (C-42) signed by Ms. Kelso for alleged July 1, 2014 injury ;
10. Affidavit of Ms. Kelso dated March 26, 2016;
11. Notice of Denial of Claim for alleged August 26, 2015 injury;
12. Notice of Denial of Claim for alleged July 1, 2014 injury;
13. August 12, 2014 office note of Dr. Rickey Hutcheson;
14. April 7, 2016 office note of Dr. Rickey Hutcheson (for identification only—Court sustained objection on the basis of lack of relevancy); and
15. Petition for Benefit Determination form Ms. Kelso submitted to the Bureau of Workers' Compensation regarding injury allegedly occurring July 1, 2014.

Technical record:[8]
1. Petition for Benefit Determination, filed November 20, 2015;
2. Ms. Kelso's response to the proposed Dispute Certification Notice, filed January 4, 2016;
3. Request for Expedited Hearing, filed March 8, 2016;
4. Five Star's Motion to Allow Telephonic Appearance, filed April 15, 2016; and
5. Ms. Kelso's response to Motion to Allow Telephonic Appearance.[9]

---

[8] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the expedited hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

[9] The Court also considered a position statement submitted by Five Star's attorney on December 9, 2015, during the mediation phase of this claim.

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 3rd day of May, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Roxanna Marie Hazy Kelso, self-represented | X | | X | rmkelso@yahoo.com; 221 Forest Hills Dr., Charleston, TN 37310 |
| Gordon Aulgur, attorney | | | X | gordon.aulgur@accidentfund.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

12