

FILED

**October 1, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 12:21 PM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| Dolores McNeill | ) | **Docket No.: 2015-05-0308** |
|       **Employee,** | ) | |
| **v.** | ) | **State File No.: 96320-2014** |
| | ) | |
| **Trustpoint Hospital, LLC** | ) | |
|       **Employer,** | ) | |
| **And** | ) | **Judge Dale Tipps** |
| | ) | |
| **Twin City Fire Ins. Co.** | ) | |
|       **Insurance Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS
### (RECORD REVIEW ONLY)

---

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed on September 14, 2015, by Dolores McNeill, pursuant to Tennessee Code Annotated section 50-6-239 (2014). Ms. McNeill requested that the Court render its decision based on a review of the case file. Trustpoint Hospital, LLC did not object to this request. Upon review of the file, the Court finds that Ms. McNeill is not entitled to the requested temporary disability benefits, but is entitled to a panel of orthopedic specialists.

### Issues

*Whether Ms. McNeill is entitled to a new panel of physicians for treatment of her work-related knee injury.*

*Whether Ms. McNeill suffered a mental injury arising primarily out of and in the course and scope of her employment.*

*If so, whether Ms. McNeill is entitled to medical and/or temporary disability benefits for a mental injury.*

1

**Information Submitted**

The Court reviewed the following documents and designates these documents as the Technical Record:

- Petition for Benefit Determination (PBD), filed August 14, 2015
- Dispute Certification Notice (DCN), filed September 11, 2015
- Request for Expedited Hearing (REH), September 14, 2015
- Parties' Briefs and Position Statements.

The Court reviewed the following documents in reaching its decision and designates the documents as Exhibits for ease of reference by the Court:

Ex. 1      Affidavit of Dolores McNeill
Ex. 2      Medical Records from St. Thomas Rutherford Hospital
Ex. 3      Medical Records from Dr. William Jekot
Ex. 4      June 8, 2015 Independent Medical Report of Dr. Greg Kyser.

**History of Claim**

Ms. McNeill is a fifty-four-year-old resident of Rutherford County, Tennessee. (*See* PBD.) Trustpoint hired her as an LPN in February 2013. (Ex. 1 at 1.) In November 2014, a Trustpoint patient assaulted Ms. McNeill, choking her and causing a neck strain. Ms. McNeill reported the incident to Trustpoint and received medical care. *Id.* at 1-2. On December 5, 2014, the same patient again assaulted Ms. McNeill, who reported injuries to her right knee, back, and right shoulder. Trustpoint provided a panel of physicians, from which Ms. McNeill selected Dr. Jekot. *Id.*

Records from St. Thomas Rutherford Hospital show that the emergency department treated Ms. McNeill on November 18, 2014, for throat symptoms after being choked by a resident of her workplace. (Ex. 2 at 12.) The emergency department also provided treatment on December 5, 2014, for back sprain, contusion of the back, and knee sprain resulting from an assault by the same resident. *Id.* at 26.

Dr. Jekot saw Ms. McNeill on December 10, 2014. He noted that she is a psychiatric nurse who was assaulted by a patient and fell on December 5, 2014. He examined Ms. McNeill and assessed right-knee pain and contusions of the right shoulder and back. He prescribed Lortab and physical therapy. He also took Ms. McNeill off work. (Ex. 3 at 37-41.) Ms. McNeill continued to treat with Dr. Jekot, and on February 26, 2015, he diagnosed a right fracture of the tibial plateau. *Id.* at 53. Dr. Jekot last saw Ms. McNeill on April 28, 2015. He noted she was much improved and found she had reached her maximum medical improvement (MMI). He released her to modified duty as of May 15, 2015, with instructions to advance to full duty as tolerated. Dr. Jekot also

advised Ms. McNeill that he was retiring from medical practice. *Id*. at 57-60.

At the request of Ms. McNeill's attorney, Dr. Greg Kyser performed a psychiatric evaluation of Ms. McNeill on June 6, 2015. Ms. McNeill reported she had been working with a schizophrenic patient when he attempted to strangle her. He reportedly told another staff member that he wanted to kill Ms. McNeill. Ms. McNeill then described a second incident where the same patient grabbed her by the hair and other staff members came to her assistance. Her employer would not allow her to return to work after she recovered from her injuries because the six months she missed exceeded the allowable twelve weeks.

Dr. Kyser noted that Ms. McNeill was mentally stable at the time of her injury but had since suffered from psychological distress. She reported crying spells and social withdrawal, as well as symptoms of posttraumatic stress disorder (PTSD), avoidance, and hyperreactivity. Dr. Kyser assessed PTSD and chronic depressive disorder. In response to questions from Ms. McNeill's attorney, he stated: "She suffers from posttraumatic stress disorder and depressive symptoms, which are directly related to the two assaults at work." He felt she would benefit from psychiatric treatment and added: "She is currently unable to work in the field of nursing. In my opinion, she is on full work restriction, relative to her work injury." (Ex. 4 at 62-66.)

Ms. McNeill stated in her affidavit that the attacks have made her fearful and depressed, and she suffers from flashbacks, anxiety, and nightmares. She contended she provided notice of a mental injury to Trustpoint on January 26, 2015, and requested a psychiatric panel. Trustpoint provided two panels, but the doctors she selected refused to accept workers' compensation patients. Trustpoint asked Ms. McNeill if she could suggest a psychiatrist who would be willing to see her, and she requested Dr. Kyser on March 24, 2015. Trustpoint has not authorized any psychiatric treatment. (Ex. 1 at 3-4.)

Ms. McNeill also stated in her affidavit that she has been unable to work since the assault on December 5, 2014, due to her mental injury. Trustpoint terminated her employment on February 27, 2015, because she had missed more that the twelve weeks allotted under FMLA. Trustpoint terminated her temporary disability benefits on April 29, 2015. *Id*. at 4.

Ms. McNeill filed a PBD on August 14, seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediation Specialist filed the DCN on September 11, 2015.

### Ms. McNeill's Contentions

Ms. McNeill contends that she is entitled to additional medical treatment. She seeks a new panel of orthopedists for her knee treatment, as Dr. Jekot has retired. She

also contends she is entitled to psychiatric treatment and requests that Dr. Kyser be designated her authorized treating physician (ATP) for her mental injury because Trustpoint has not provided a valid psychiatric panel or authorized any treatment.

Ms. McNeill also contends that she is entitled to temporary disability benefits for the period of April 29, 2015, to the present. She argues she is unable to work because of her mental injury.

### Trustpoint's Contentions

Trustpoint contends Ms. McNeill is not entitled to psychiatric treatment because she has not established that her mental condition arose primarily out of the December 5, 2014 assault. It questions why Ms. McNeil's medical records do not document any psychiatric symptoms or complaints. Trustpoint also notes that Dr. Kyser identified several potential contributing factors that are unrelated to Ms. McNeill's work, such as an abusive father who committed suicide, an abusive ex-husband, prior injuries, and pre-existing medical conditions. Trustpoint argues that Dr. Kyser failed to identify the workplace assaults as the primary cause of her PTSD.

Even if Ms. McNeill's PTSD is found to be compensable, Trustpoint contends that she is not entitled to any additional temporary disability benefits because she reached MMI for her physical injuries on April 28, 2015.

### Findings of Fact and Conclusions of Law

*Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, an employee must come forward with sufficient evidence from which the trial judge could conclude that the employee is likely to prevail at a hearing on the merits. *Id.*

*Factual Findings*

Ms. McNeill suffered a compensable physical injury at work on December 5, 2014. She received treatment from the ATP, Dr. Jekot, who indicated she reached MMI from her physical injury on April 28, 2015.

4

*Application of Law to Facts*

Orthopedic Panel

Trustpoint's position statement does not address Ms. McNeill's request for a new orthopedic panel, but Dr. Jekot's April 28, 2015 note confirms that, in fact, he has retired. This effectively leaves Ms. McNeill without an ATP for any additional orthopedic treatment. As the compensability of Ms. McNeil's right-leg injury is not in dispute, she is entitled to medical treatment for that injury, pursuant to Tennessee Code Annotated section 50-6-204(a)(3(A)(i) (2014). Therefore, Trustpoint must provide a new panel of orthopedic specialists for Ms. McNeill to select a new ATP.

Psychiatric Treatment

Trustpoint's arguments regarding causation of Ms. McNeill's psychiatric condition are not persuasive. Its attempt to substitute its own medical conclusion for Dr. Kyser's opinion ignores the fact that Dr. Kyser listed Ms. McNeill's other stressors in her medical history and still concluded that her PTSD is "directly related to the two assaults at work." This suggests he eliminated those other factors as the primary cause of her condition.

Causation is, however, not the only hurdle faced by Ms. McNeill. Although Trustpoint initially offered psychiatric panels, it now denies the compensability of Ms. McNeill's alleged mental injury. As a result, Ms. McNeill bears the burden of establishing her entitlement to psychiatric treatment. "All psychological or psychiatric services available under subdivisions (a)(1) and (b)(1) shall be rendered only by psychologists or psychiatrists and *shall be limited to those ordered upon the referral of physicians authorized under subdivision (a)(4).*" Tenn. Code Ann. § 50-6-204(h) (2014) (emphasis added).[1]

A careful review of the medical records in the file reveals no referral for psychological or psychiatric evaluation or treatment by the ATP, Dr. Jekot. Until Ms. McNeill obtains such a referral from her ATP, the Court has no statutory authority to order a psychiatric panel or, as she requests, to designate Dr. Kyser as the authorized psychiatrist.

---

[1] Subdivision (a)(4) refers to the prior statute's requirement of providing medical treatment through an authorized physician selected from a panel. Under the current version of the statute, these requirements are set out in subdivision (a)(3).

5

<u>Temporary Disability Benefits</u>

Ms. McNeill seeks temporary disability benefits for the period of April 29, 2015. She relies on Dr. Kyser's opinion that she is "on full work restriction, relative to her work injury."

To establish a prima facie case for temporary total disability benefits, an employee must show that: (1) he or she was totally disabled and unable to work as a result of a compensable injury; (2) that a causal connection exists between the injury and the employee's inability to work; and (3) the duration of the period of the employee's disability. *Gray v. Cullom Mach., Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004); *Jewell v. Cobble Construction and Arcus Restoration,* No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015). Because Ms. McNeill's request for temporary disability benefits is based on her mental injury claim, it must also meet the requirements of Tennessee Code Annotated section 50-6-207(1)(E) (2014), which provides:

> An employee claiming an injury as defined in § 50-6-102, when the date of injury is on or after July 1, 2014, shall be conclusively presumed to be at maximum medical improvement when the treating physician ends all active medical treatment and the only care provided is for the treatment of pain or for a mental injury that arose primarily out of a compensable physical injury. The employer shall be given credit against an award of permanent disability for any amount of temporary total disability benefits paid to the employee after the date that the employee attains maximum medical improvement as determined by a workers' compensation judge.

Ms. McNeill's mental injury involves an underlying physical injury, for which she received treatment from Dr. Jekot. He ended active medical treatment and found that Ms. McNeill reached MMI for her physical injuries on April 28, 2015. Pursuant to subsection (1)(E), cited above, she is conclusively presumed to be at MMI. She therefore has not established that she is likely to prevail on her request for TTD benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Ms. McNeill's physical injuries shall be paid and Trustpoint or its workers' compensation carrier shall provide Ms. McNeill with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204 (2014), to be initiated by Trustpoint or its workers' compensation carrier providing Ms. McNeill with a panel of orthopedic physicians as required by that statute. Medical bills shall be furnished to Trustpoint or its workers' compensation carrier by Ms. McNeill or medical providers.

2. Ms. McNeill's requests for psychiatric treatment and temporary disability benefits are denied at this time.

3. This matter is set for a Scheduled Hearing on November 3, 2015, at 9:00 a.m.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to <u>WCCompliance.Program@tn.gov</u> no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email <u>WCCompliance.Program@tn.gov</u> or by calling (615) 253-1471 or (615) 532-1309.


　　**ENTERED this the 1st day of October, 2015.**

_____
**Dale Tipps, Judge**
**Court of Workers' Compensation Claims**


<u>Initial (Scheduling) Hearing</u>:

　　An Initial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate.**

　　**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

**4.** The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if

any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order for Medical Benefits was sent to the following recipients by the following methods of service on this the 1st day of October, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Steven Waldron | | | X | arlenesmith@comcast.net |
| Tamara Gauldin | | | X | Tamara.gauldin@thehartford.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn**