

**FILED**

**May 11, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 10:50 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| **SHARON HAGER,** | ) | |
| **Employee,** | ) | **Docket No. 2015-06-0184** |
| | ) | |
| **v.** | ) | **State File No. 13843-2015** |
| | ) | |
| **UNITED PARCEL SERVICE, INC.,** | ) | **Judge Joshua Davis Baker** |
| **Employer,** | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **LIBERTY MUTUAL INSURANCE COMPANY,** | ) | |
| | ) | |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY DISBILITY BENEFITS

This matter came before the Court on a Request for Expedited Hearing filed by the employee, Sharon Hager, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Ms. Hager seeks temporary disability benefits, medical benefits, reimbursement for out-of-pocket medical expenses and appointment of Dr. J. Wills Oglesby as the authorized treating physician. Although Ms. Hager seeks several different forms of relief, the central legal issue is whether Ms. Hager's work-related accident resulted in her need for the surgery performed by Dr. Oglesby. For the reasons set forth below, the Court finds Ms. Hager failed to carry her burden of proving a likelihood of success on this issue at hearing on the merits and, therefore, denies her request for relief.[1]

### Claim History

Ms. Hager is a fifty-year-old resident of Davidson County, Tennessee, employed by UPS in a part-time supervisory capacity. In her affidavit, Ms. Hager alleged on

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached as an appendix to this order.

February 16, 2015, she was loading packages onto delivery trucks from a conveyor belt.[2] (Ex. 2) She felt pain in her right shoulder, reported the injury and received medical care.

UPS sent her to CareSpot for examination and treatment. X-rays taken at CareSpot indicated no acute fracture or changes. The examining physician's assistant (PA) opined Ms. Hager suffered from a shoulder sprain. The PA prescribed pain and inflammation medication, provided a sling, and assigned work restrictions, which UPS accommodated.

Ms. Hager later returned to CareSpot complaining the condition of her shoulder had worsened. CareSpot recommended an orthopedic evaluation, and UPS provided a panel of orthopedic physicians. Ms. Hager selected Dr. Michael LaDouceur as the authorized treating physician. The treatment notes from her first appointment with Dr. LaDouceur contain the following history:

> She reports she injured her shoulder on 2-15-15 during a recent winter storm. She works as a supervisor for UPS and a number of employees had called in due to weather issues. As a result she was working on the line sorting packages. She recalls no specific injury but states that at the end of that day she had severe pain in the shoulder which radiated down the medial aspect of the arm.

(Ex. 1 at 12.)

Dr. LaDouceur ordered an MRI and arthrogram of Ms. Hager's right shoulder. The MRI showed mild to moderate subscapularis tendinosis, but no discernable tears or other problems in the rotator cuff tendons. The MRI also showed "minimal" arthritis in the acromioclavicular joint.

After reviewing the MRI results, Dr. LaDouceur diagnosed shoulder tendinosis, a shoulder sprain and strain, myofascial spasm and shoulder pain. He recommended therapeutic treatment and wrote the following in his treatment notes: "She continues to display significant pain behaviors and a disuse posture for her right upper extremity. The patient was advised that no structural abnormalities are noted [and] the use of her arm is essential for what I would anticipate should be a full and complete recovery." (Ex. 1 at 20-21.)

---

[2] In her Petition for Benefit Determination, Ms. Hager gave the following brief description of injury: "Loading boxes on truck. I was injured [the] first day. Was instructed to keep working throughout the week." (T.R. 3.)

2

Ms. Hager attended physical therapy but did not perform well. The physical therapy notes indicate the therapist warned Ms. Hager that failure to perform the exercises regularly could result in diminished shoulder function.

After Ms. Hager attended physical therapy for approximately a month and a half and received a shoulder injection that failed to alleviate her pain, Dr. LaDouceur placed her at maximum medical improvement on May 19, 2015. He assigned no permanent impairment or workplace restrictions. He stated: "Unfortunately [Ms. Hager] continues to demonstrate objective findings which are not consistent with her subjective complaints. Her functional capacity evaluation corroborates my assessment that this patient has no objective evidence of significant injury and her behaviors suggest frank malingering." (Ex. 1 at 32). Dr. LaDouceur believed Ms. Hager failed to give appropriate effort during physical therapy and opined she needed no further medical treatment. He discharged her from his care and stated, "no followup in this office will be authorized."[3] *Id.*

Despite Dr. LaDouceur's unconditional release, Ms. Hager continued to suffer from shoulder pain. She sought care at the Summit Medical Center emergency room when she experienced intense pain and began treating with Dr. J. Wills Oglesby under her personal medical insurance.

On her patient intake form at Dr. Oglesby's office, Ms. Hager failed to specify a cause of her injury. The medical history from her first appointment states, "In February of this year, she fell injuring her right arm and last week she bumped into someone while walking and the pain increased dramatically." (Ex. 1 at 43.) Another record from this same visit indicated Ms. Hager also told Dr. Oglesby, or a member of his staff, her pain started from taking on extra work at her job in February 2015. She also described an incident where she missed a step and pulled her arm to prevent herself from falling. (Ex. 1 at 69.)

Dr. Oglesby noted Ms. Hager had no history of right shoulder issues before February 16, 2015. He recommended an EMG and a new MRI. The MRI showed Ms. Hager suffered from several conditions, including adhesive capsulitis and arthritis. He assessed that Ms. Hager suffered from "profoundly symptomatic frozen shoulder syndrome." He referred her for physical therapy, and operated on her shoulder when therapy provided unsuccessful. The operative notes indicated Ms. Hager had a "type I SLAP lesion." (Ex. 1 at 52.)

---

[3] Before Dr. LaDouceur released her from care, Ms. Hager expressed dissatisfaction with his care to Liberty Mutual's adjuster and requested evaluation by another physician. (Ex. 2) Liberty Mutual denied her request.

After the surgery, UPS sent Dr. Oglesby a causation letter.  (Ex. 1 at 55-56.)  Dr. Oglesby provided the following responses:

(1) Within a reasonable degree of medical certainty, is Ms. Hager's shoulder condition as documented in your medical records a direct result of her work related lifting activities?

Yes_____     No_✓_

*SHE TOLD ME*
*SHE FELL*

(2) If the answer to question #1 is yes, is it your opinion that Ms. Hager's shoulder condition as documented in your medical records, a direct result and primarily caused by her work related lifting activities at United Parcel Services, Inc.?  (primarily is defined by the Tennessee Department of Labor as causation above 51% considering all other contributing factors)

Yes_____     No_✓_

(3) If Ms. Hager suffers from pre-existing shoulder issues, within a reasonable degree of medical certainty, is it your opinion that Ms. Hager's pre-existing medical condition with her shoulder has been exacerbated, advanced, and/or aggravated by her work-related activities at United Parcel Services, Inc.?

*FALL AT WORK*

Yes_✓_     No_____

(4) If the answer to question #3 is yes, is it your opinion that Ms. Hager's pre-existing medical condition with her shoulder has been primarily exacerbated, advanced and/or aggravated by her work-related activities at United Parcel Services, Inc?  (primarily is defined by the Tennessee Department of Labor as causation above 51% considering all other contributing factors)

Yes_✓_     No_____

*FALL*

On September 11, 2015, Dr. Oglesby noted since her surgery Ms. Hager was doing well with therapy and home exercises, although some discomfort remained.  On November 4, 2015, Dr. Oglesby wrote in his medical note:

4

At the completion of her treatment, Ms. Hager informed us that this is a work-related injury. I have been treating her under her private insurance for the duration and this is the first she has mentioned to me or any of my staff that this is a work-related problem. Since she has chosen to now try to retroactively file this under the worker's compensation system, and I am apparently not on their panel, I will defer any further evaluations and treatment to her new physician. I am happy to release records to her care. There is no reason for her to return to see me.

(Ex. 1 at 68.)

Ms. Hager filed a Petition for Benefit Determination seeking workers' compensation benefits on March 31, 2015. (T.R. 3.) After filing the Petition, the parties entered into mediation with a workers' compensation mediator. The parties were unable to settle their dispute through mediation and the mediator issued a Dispute Certification Notice on May 12, 2015. (T.R. 2.) Thereafter, Ms. Hager filed a Request for Expedited Hearing on February 16, 2016, seeking temporary disability and medical benefits (T.R. 1), and this Court convened an evidentiary hearing of Ms. Hager's Request on April 13, 2016.

At the hearing Ms. Hager testified that on February 16, 2015, she informed Katrina, a worker in UPS' safety division, of her shoulder injury. She claimed Katrina ignored her, so she returned to work. Her shoulder continued to hurt for the rest of the week, and she had trouble sleeping over the weekend. On Monday, she went to Katrina again and demanded a report be filed.

When she began treating with Dr. LaDouceur, she testified her shoulder hurt so badly she could not "move" or "walk." At the end of her treatment with Dr. LaDouceur, her pain continued. After he released her from care, Ms. Hager testified she "begged" the Liberty Mutual adjuster, Terry Delucia, for a second opinion but received no response.

Ms. Hager testified she continued to get hurt at work when people bumped into her shoulder. She also described an incident where she slipped on the stairs at work and hurt her shoulder when she grabbed a stair railing to avoid falling. She did not provide a date for either occurrence. Ms. Hager admitted she never fell at work.

After she had surgery, Ms. Hager testified she attempted to follow up with Dr. LaDouceur, but he would not see her. Dr. Oglesby also refused to treat her. At this point, Ms. Hager has no physician willing to treat her under workers' compensation.

Ms. Hager argued Dr. LaDouceur misdiagnosed her condition and prematurely released her to return to work. Specifically, she claimed he failed to diagnose a SLAP lesion in her shoulder.

UPS argued Dr. LaDouceur's opinion on causation is presumed correct and has not been rebutted by Dr. Oglesby's causation letter. It further argued Ms. Hager provided inconsistent statements concerning the cause of her injury.

## Findings of Fact and Conclusions of Law

While Ms. Hager seeks additional medical care and temporary disability benefits, the crux of this expedited hearing essentially concerns the reasonable medical necessity of the shoulder surgery performed by Dr. Oglesby. If the surgery was reasonable and necessary for treatment of a work-related shoulder injury, she could be entitled to recover her out-of-pocket costs and receive additional follow-up care with Dr. Oglesby under workers' compensation. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). If the surgery is not reasonable and necessary for treatment of the work-related accident, she is entitled to no benefits at this time.

Ms. Hager bears the burden of proving reasonable medical necessity of Dr. Oglesby's treatment. *See Moore v. Town of Collierville,* 124 S.W.3d 93, 98 (Tenn. 2004). In order to carry her burden at this expedited hearing, she must supply the Court sufficient evidence to show she would likely prevail at a hearing on the merits in proving reasonable medical necessity. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2015); *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27. 2015). For the reasons provided below, the Court finds Ms. Hager failed to carry her burden and denies her request for benefits.

To explain why Ms. Hager failed to carry her burden of proving reasonable medical necessity requires analysis of the events resulting in her treatment from Dr. Oglesby. This claim essentially began with Ms. Hager developing pain in her right shoulder. At the expedited hearing, Ms. Hager testified her shoulder pain began while loading packages onto a delivery truck at UPS in February 2015. She cited no specific loading incident but attributed the pain to an increased workload resulting from the absence of several employees due to inclement weather. She reported the condition to her supervisor and received conservative care.

At her first appointment with Dr. LaDouceur, Ms. Hager reported she injured her shoulder while loading packages at work. After treating her condition conservatively for several months, Dr. LaDouceur placed Ms. Hager at MMI, released her to return to work without restrictions and discharged her from his care. His medical notes indicated he released Ms. Hager because she consistently magnified her symptoms and failed to give appropriate effort in physical therapy.

Ms. Hager asked for evaluation by another physician, but Liberty Mutual denied her request. Because she could no longer receive treatment under workers' compensation but continued to have shoulder pain, she began treating with Dr. Oglesby under her private insurance coverage.

At her first appointment with Dr. Oglesby, Ms. Hager completed an intake form and failed to disclose her symptoms resulted from a work-related accident. Additionally, the medical history notes from that visit indicated Ms. Hager suffered injury when she fell. The notes do not indicate her injury arose from loading boxes at work. After conservative care proved unsuccessful, Dr. Oglesby operated on Ms. Hager's shoulder and noted she had a type I SLAP lesion.

Shortly after the surgery, Ms. Hager's counsel sent Dr. Oglesby a causation letter. In the letter, Dr. Oglesby answered "no" when asked if Ms. Hager's shoulder condition resulted from her lifting activities at work. Instead, he wrote "she told me she fell." Dr. Oglesby did answer "yes" when asked whether her workplace activities aggravated a pre-existing medical condition. However, while he answered affirmatively, he also wrote "fall" in the area next to the question.

The Court finds Dr. Oglesby attributed Ms. Hager's injury to a fall at work rather than a lifting incident. Ms. Hager, however, did not fall at work but testified she got hurt while loading boxes. She additionally testified concerning two other incidents—one where she bumped into a coworker and another where she caught herself to avoid falling after slipping on a stair—but neither of those incidents are the subject of this claim as her Petition for Benefit Determination lists only the box-loading incident as the cause of her injury. (T.R. 1.)

Tennessee law requires an employer to provide "free of charge to the employee such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter[.]" *See* Tenn. Code Ann. § 50-6-204(a)(l)(A) (2014). As previously stated, Ms. Hager has the burden of proving reasonable medical necessity of the treatment provided by Dr. Oglesby. She cannot prove reasonable medical necessity without an expert opinion establishing a causal connection between the workplace accident and the treatment provided. *See Thomas v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991) ("Medical causation and permanency of an injury must be established in most cases by expert medical testimony.").

Dr. Oglesby opined Ms. Hager's shoulder condition, which included a type I SLAP lesion, resulted from a fall at work. Ms. Hager has not filed a workers' compensation claim for benefits resulting from a fall at work. As pled, her claim concerns only the box-loading incident that occurred on February 16, 2015. Dr. Oglesby specifically opined that the shoulder condition did not result from work-related lifting activities. This opinion does not support Ms. Hager's position on the medical necessity

7

of the treatment he provided. The Court, therefore, finds Ms. Hager is unlikely to prevail at a hearing on the merits on the issue of entitlement to payment for Dr. Oglesby's treatment. Additionally, because Dr. Oglesby related her need for treatment to a workplace fall that never occurred, the Court also denies Ms. Hager's request for additional treatment with Dr. Oglesby.[4]

In addition to medical care, Ms. Hager also requests payment of temporary disability benefits. In order to establish a prima facie case for temporary total disability benefits, the worker must show (1) he or she is totally disabled and unable to work due to a compensable injury, (2) the work injury and inability to work are causally connected, and (3) the duration of the disability. *Gray v. Cullom Machine, Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004); *Jewell v. Cobble Construction and Arcus Restoration,* No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015). An employee may recover temporary total disability benefits until she is able to return to work or attains maximum medical improvement. *Prince v. Sentry Ins. Co.*, 908 S.W.2d 937, 939 (Tenn. 1995).

Here, Ms. Hager is off work under short-term disability following her shoulder surgery. The Court found Ms. Hager failed to prove a causal relationship between her need for shoulder surgery and her workplace lifting accident   For this reason, the Court finds Ms. Hager failed to prove she would likely prevail at a hearing on the merits in proving entitlement to temporary disability benefits. Therefore, her request for these benefits is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Hager's claim against UPS for additional medical benefits and payment for treatment provided by Dr. Oglesby is denied at this time.

2. Ms. Hager's request for temporary disability benefits is denied at this time.

3. This matter is set for an Initial (Scheduling) Hearing on June 13, 2016, at 10:30 a.m. (CDT).

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this order must occur no later than seven business days from the date of entry of this order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this order to the Bureau by email to

---

[4] This finding does not prohibit Ms. Hager from gathering additional information concerning medical necessity of Dr. Oglesby's treatment to present in future proceedings.

8

WCCompliance.Program@tn.gov no later than the seventh business day after entry of this order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED ON THIS THE 11TH DAY OF MAY, 2016.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial (Scheduling) Hearing has been sent for **June 13, 2016, at 10:30 a.m. Central Time** with **Judge Joshua Davis Baker, Court of Workers' Compensation Claims. You must call 615-741-2113 or toll free at 855-874-0474 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).</u>**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk within seven business days of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be

made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

<u>Exhibits:</u>

1. Medical Records of Sharon Hager
2. Ms. Hager's affidavit
3. Ms. Hager's wage statement
4. First Report of Injury
5. Panel of physicians

<u>Technical Record</u>[5]:

1. REH filed February 16, 2016
2. DCN filed May 12, 2015
3. PBD filed March 31, 2015
4. UPS Witness and Exhibit List filed April 7, 2016
5. UPS's position statement dated April 24, 2015
6. Wage statement
7. First Report of Injury
8. Panel of Physicians/Dr. LaDouceur selected February 26, 2015
9. Email correspondence
10. Ms. Hager's Brief in Support of her PBD filed October 6, 2015
11. UPS Motion to Dismiss Request for Expedited Hearing filed November 4, 2015
12. Ms. Hager's Response to Employer's Motion to Dismiss Requested Expedited Hearing filed November 13, 2015, with affidavit.
13. Ms. Hager's Response to UPS Request for Brief Extension of Time filed February 24, 2016
14. Ms. Hager's Exhibit List filed October 7, 2015
15. Ms. Hager's Supplemental Exhibit List filed February 16, 2016, with attachments
16. UPS's Response in Opposition to Request for Expedited Hearing filed March 7, 2016 with attachments

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 11th day of May, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Jonathan M. West, attorney for Ms. Hager | | | X | jon@westlawpllc.com |
| David T. Hooper, attorney for UPS | | | X | dhooper@hooperzinn.com |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

12